FRANKLIN AND ARMFIELD *vs.* JOHN LONG.—*June,* 1836.

The vendor gave a receipt to the vendee's agent for a sum of money " *in full payment for*" his slave, whom he warranted *to be sound in body and mind,* and a slave for life; and at the same time he gave the agent an order on the sheriff of the county to deliver the negro, then confined in the jail for safe keeping. When the agent arrived at the jail, it was ascertained the negro had cut his throat, and soon after died. In an action brought by the vendee to recover back the purchase money, it was held to be the intention of the parties, that the transaction should be consummated by a delivery of the slave; that the contract was for the purchase of a living and sound slave, and if he had cut his throat *before* the contract was made, which was a question for the jury, the vendee had a right to rescind the contract, and recover back the purchase money.

Parol evidence of an agreement made between the agent of the plaintiff and defendant a few days anterior to the date of the receipt and order, showing that the former agreed to purchase the slave in question at the sum mentioned in the receipt, from the latter, who also agreed *on the payment of the purchase money* to deliver the negro, was considered inadmissible in this cause.

A mere naked verbal agreement of one party to purchase a slave, for a stipulated sum; and of another party to deliver the slave on the payment of the sum, with no delivery actual or constructive, nor any thing given in earnest to bind the bargain, nor any payment on account of it, is void under the statute of frauds.

By the contract in this case an immediate actual delivery of the negro was dispensed with; the order for delivery was substituted for it, which was not a constructive delivery as it depended upon the subsequent assent of the sheriff. The property in the slave however, passed to the defendant, and delivery was not necessary to give him title.

Subsequent parol agreements, not contradicting the terms of written contracts, but extending only the time of their performance, may be admitted in evidence, in actions to enforce such written agreements.

A delivery of goods actually sold is not necessary to pass the right to the vendee, if there be any thing given in earnest, or a payment in part, or in whole of the purchase money, or a sufficient note or memorandum in writing to gratify the statute of frauds.

It is the received doctrine in this *State* that if a person sells an article with a warranty of soundness, which turns out to have been unsound at the time of the sale and warranty, the buyer may either keep the article, and bring an action on the warranty; or rescind the *contract by a return of the article,* or offer to return it in a reasonable time, so that the vendor is placed in *statute quo,* and sue for and recover back the purchase money, or so much as he has paid, in an action for money had and received.

Franklin and Armfield *vs.* Long.—1836.

In such a case, in an action brought by the vendor for the purchase money, the vendee may set up a breach of the warranty as a defence to the action. Where the court instructs a jury that the plaintiff is not entitled to recover, the hypothesis of facts assumed as the basis of such instruction must include every fact of the plaintiff's cause upon which he might properly claim a verdict, admitting all which, he would still not be entitled to recover, otherwise it is error. If upon any legitimate view of the plaintiff's case he would be entitled to a verdict, a peremptory direction that he is not entitled to recover ought not to be given.

APPEAL from *Charles* county court.

*Assumpsit* by the appellants against the appellee instituted on the 22d of July, 1833, for money had and received by the defendant for the use of the plaintiffs.

Issue was joined upon the plea of *non assumpsit.*

1. At the trial the plaintiffs proved to the jury by *John Ware,* a competent witness, that he, as agent of the plaintiffs, in the latter part of June, 1833, agreed to purchase from the defendant, a negro man, for the sum of $460, the defendant agreeing on the payment of the purchase money, to deliver the negro to the said agent, and that on the 5th of July, 1833, he the agent, paid the said defendant $460 for the said negro, and that on the said 5th day of July, the time of the said sale or payment, the following papers were executed by the defendant.

" Received, July 5th, 1833, of *John Ware,* four hundred and sixty dollars, in full payment for a negro man named *John,* aged 27 years, which negro I warrant and defend to be *sound in body and mind,* and a slave for life, witness my hand and seal the day and year above written.

JOHN LONG.   [ <i>Seal.</i> ]"

" SIR :—You will please to deliver my man *John,* to *John Ware,* and oblige yours,                JOHN LONG."
*July 5th,* 1833.

This last paper was directed to *Thomas Perry* the sheriff of the county, both papers being produced by the witness at the trial.

The defendant then prayed the court to instruct the jury, that the parol agreement as stated to have been made in the

latter part of June, 1833, by which the agent agreed to give $460 for the negro man to the defendant, the defendant assuming on the payment of the purchase money, to deliver the negro to the said agent, is not legal evidence in this cause, and that the contract of the 5th of July, 1833, as evidenced by the receipt and order, is the only contract on which the defendant is legally responsible.

The court (Key and Dorsey, A. J's.) gave this instruction. The plaintiffs then further proved to the jury, that on the 5th of July, 1833, the negro man in question was confined in the jail of the county for safe keeping, and in the custody of *Thomas Perry*, the sheriff. That the residence of the defendant, where the contract was made, was five miles from the jail. That at the time of the sale, the agent offered to go to the jail, as the defendant was busily employed, when the defendant executed the said order to *Thomas Perry* at the jail. That the said agent proceeded on the same day to the residence of the sheriff, and required him to deliver the said negro. That shortly subsequent to the arrival of the agent at the jail, and residence of the sheriff, and on going to said jail, it was ascertained that the negro had cut his throat. That the negro soon thereafter died. That he was never in person delivered to the agent, but the sheriff, after the negro had cut his throat and was dead, offered so to do, but the said agent declined receiving him.

The defendant, then, prayed the court to instruct the jury, that from the evidence in this exception, a title in the negro passed by the payment of the purchase money, and order of delivery, as evidence of said contract of sale of the 5th of July, 1833, if the jury shall believe from the evidence, that at the time the said contract of sale was made, the said negro was alive and in being, and that therefore the plaintiffs are not entitled to recover. And further, that the plaintiffs cannot maintain an action of *assumpsit* against the defendant, for money had and received.

The court gave these several instructions, and the plaintiffs excepted, and the verdict and judgment being against them they appealed to this court.

. The cause was argued before BUCHANAN, Ch. J. and STEPHEN, DORSEY, and SPENCE, Judges.

T. F. BOWIE, for the appellants, contended.

1. The parol agreement between the plaintiffs' agent and the defendant, in the latter part of *June*, 1833, by which the defendant was *to deliver* the negro slave upon the payment of the purchase money, was a necessary and essential part of the plaintiffs' case, and if true and believed by the jury would have entitled the plaintiffs to a verdict. The agreement *to deliver* the slave, was the *inducement* to, and formed an essential ingredient in the contract of sale, and being an *unconditional* engagement, the party making it will be held to a strict compliance. Independent of such an agreement, the simple contract of sale would impose that duty on the defendant, for being founded upon a *valuable consideration*, delivery would have been essential to its validity, and therefore necessarily implied in the contract of sale; and indeed, under the *statute of frauds* the validity of every sale of a *chattel*, requires a delivery to, and an acceptance by the purchaser, and is only dispensed with in those cases where under the provisions of the acts of 1729, ch. 8, sec. 5, and 1763, ch. 13, sec. 2, the vendor retaining possession executes a bill of sale which must be recorded within twenty days. In the present case the parol agreement *to deliver* was not *merged* in the written contract contained in the receipt of 5th July, 1833, not was it inconsistent with, or repugnant to, any of its terms, and the failure of the defendant to comply with it, after having received the purchase money, constituted in fact the very *gist* of the plaintiffs' action. Surely then, the court below were wrong in refusing to permit evidence of its existence to go to the jury. It was not on account of any *failure* in the *warranty* contained in the receipt, that the plaintiffs sought to recover back the money. The slave in question may have been " sound in mind and body and a slave for life" at the time of the contract of sale, yet owing to the failure of the defendant to comply with his

engagement *to deliver*, the plaintiffs never got possession of him.   Could it be contended in such a case that the defendant would not be answerable in damages to the plaintiffs for a breach of contract? and would not the *difference* between the value of the slave at the time of sale, and his value at the time the delivery was to have been made, have been the standard of damages?   *Chitty on Con.* 132.   But in a case where the purchase money is paid *in advance*, and the vendor subsequently fails or refuses to deliver possession, or is unable to do so, might not the purchase money upon the same principles of law, be recovered back in an action for money *had and received?* and in such an action it would seem to be clear, that evidence of a contract *to deliver* either express or implied, whether *by parol* or in writing, would not only be legal and competent evidence, but essential to the plaintiffs' right to recover.   The parol agreement in the present instance, not being *merged* in, or inconsistent with the receipt of July 5th, 1833, formed an important link in the chain of evidence, and ought in connection with the written paper to have been submitted to the jury.   The *receipt* was merely relied upon as evidence of the payment of the money, while the *parol* contract of sale of *June*, 1833, disclosed more accurately the precise terms of sale, and the nature of the liabilities which the parties intended to place themselves under.   Both taken together disclose the whole nature of the transaction, and should have been regarded by the court below in deciding upon the rights of the parties.

2. The opinion of the county court on the second branch of the exception is also erroneous.   They decide " that a title in the negro slave passed by the payment of the money and *order* of the defendant, directing the sheriff to deliver the slave to the agent of the plaintiffs, and if the jury believe from the testimony in the cause, that the negro slave was alive and in being at the time of the contract of sale, the plaintiffs were not entitled to recover, and that an action of *assumpsit* for money had and received could not be maintained against the defendant."   There can be no doubt, that

under the *statute of frauds* a *delivery to*, and an *acceptance by* the vendee of goods sold, are essential to the validity of every sale, and both must concur before a title is vested in the vendee, *Chitty on Con.* 115. If from any cause whatever not attributable to the vendee, the property contracted to be sold, perishes or is destroyed before *a delivery* of it to the vendee, the vendor will not be permitted to recover the purchase money, and the loss, if any, must fall upon him; and so, *e converso*, if the vendee pays the purchase money *in advance*, he may recover it back in an action for money *had and received*, it being a general and well settled rule of law, that this action which is a kind of equitable action, will lie in all cases, where there is *a failure of consideration*, or where *ex æquo et bono*, the defendant ought to refund. *Chitty on Con.* 182. But *delivery* may be either *actual* or *constructive*, and the simple question here to be inquired into is, was the order to the sheriff (in whose custody the negro slave was) to deliver him to the agent of the plaintiffs, such a *constructive delivery* as vested the title in the plaintiffs as vendees, so as to throw the loss upon them? The doctrine of *constructive delivery* has been resorted to by the courts for purposes of general *convenience*, and for the benefit of *trade*. *Ross on vendors*, 12 *Law Lib.* 34. *Chitty on Con.* 116. As where goods are ponderous and bulky, incapable of being handed over from one to another, a *constructive* has been substituted for an *actual* delivery, such as the delivery of the key of a warehouse in which the goods are lodged, writing the name of the vendee at his request and in his presence on the goods sold, or by delivery of any other *indicia* of property. But it has rarely if ever been applied to that description of property which is capable of an *actual* delivery by *manucaption*. The *necessity* for such a rule does not exist in such cases, public policy or convenience does not require it, and where the *reason* of the rule does not exist, the rule itself ceases to be of any effect. There can be no necessity for the application of such a rule in the present case. A slave is a species of property as

capable of an *actual* delivery as any other description of property whatever, and might easily have been so disposed of in the present instance. But the *order* in question does not come within the range of the doctrine even of *constructive* delivery. There is no evidence in the record that the sheriff who was but the *agent* of the vendor, ever *accepted* the order, or *consented to retain* the slave as the property of the vendees. On the contrary it appears, that although the order was presented to him by the agent, he *did not offer* to deliver the slave until *after* he was dead. He did not even go with the agent to the jail *for the purpose* of delivering to him the said slave, and in the absence of all proof to shew, that the sheriff *accepted* the order, and *agreed to retain* the slave for the vendees, the county court were clearly wrong in deciding that the giving of the order in such a case was such a delivery as passed the title to the vendees. A *delivery order*, given under such circumstances, in order to bind the vendee, and to make it a *constructive* delivery to him, must not only be presented by the vendee to the person in whose possession the property is, but it must be *accepted* by that person, or he must consent to retain the property for the vendee. *Chitty on Con.* 115. *Lucas et al. vs. Dorrien et al,* 7 *Taunt.* 278. *Bentall et al. vs. Burn,* 10 *Eng. Com. Law Rep.* 138. 1 *Moore,* 29. The sheriff may have had some claim or lien on the slave for fees, and he may have refused to execute the order. Until the *order* was *accepted* by the sheriff it was as *revocable* by the vendor as any other order he might have given. Such an *order* is not like an *authority* to go and *take* possession. In the one case, the vendee has no one to consult but himself, and it depends entirely on his own *volition* whether he will use the *authority*—in the other case, it depends entirely on the *will* and *pleasure* of the third person whether he can ever get possession—and if he should refuse to execute the order, the vendor would still be bound to deliver possession. *Ware,* the agent, never could have intended, at the time he took the order from the defendant, to have released him from his obligation to *deliver*

*possession*, without knowing whether the sheriff would *accept* the order or not, and to give it now such a construction would be clearly opposed to every principle of justice.

3. It is certainly difficult to discover what other form of action the plaintiffs could have adopted in accordance with the strict rules of pleading, than the action of *assumpsit* which they have adopted. If upon the facts, they are entitled to recover at all, it must be in this form of action and no other. The court below intimate that they ought to have brought an action of *debt*, as the *only* contract upon which the defendant is responsible, is the contract contained in the *receipt* of July 5th, 1833, an instrument *under seal*. But the appellate court will discover from the very *nature* of the plaintiffs' demand, that the *receipt itself*, regarding it even as a *contract* in reference to the purchase money therein mentioned, in which light it never can be considered, is not, and never could have been the ground or *gist* of the plaintiffs' action. It is but *inducement* to the action, and must be used as *evidence* to support the plaintiffs' right to recover     The foundation of the action is the payment of the money upon a *failure of consideration*, and whether the *evidence* necessary to support the action, be *in writing and under seal*, or not, still the form of the action must be *assumpsit* for *money had and received*, as no other action will lie in such cases. *Chitty on Con.* 182.

CRAIN for the appellee.

1. Parol evidence was clearly inadmissible to control the written contract of July, 1833 ; but if admissible, the proof proposed to be offered could have no influence upon it, as it consisted of mere conversations not binding upon the parties, there being neither earnest paid, or other act to operate upon their rights in reference to the subject of them. 2 *Bac. Abr.* 447.

2. When the purchase money was paid, and the order to the sheriff given, the title of the property was transferred to the vendee, and of course from that time, it was at his risk.

*Hind vs. Whitehouse,* 7 *East,* 566. *Elmore vs. Stone,* 1 *Taunt.* 459. *Phillimore et al. vs. Barry et al,* 1 *Camp.* 513 *Lansing and Lansing vs. Turner and Strafford,* 2 *Johns. Rep.* 13. *De Fonclear vs. Shottenkirk,* 3 *Ib.* 170. *Ross on Vendors,* 12 *Law Lib.* 37.

BUCHANAN, Ch. Judge, delivered the opinion of the court

This suit was instituted to recover back the sum of $460 which had been paid by the plaintiffs to the defendant, on a contract for the sale of a negro man, and comes up on a bill of exceptions to three several instructions given to the jury by the court, before which the cause was tried.

It appears from the statement in the bill of exceptions, of the evidence offered by the plaintiffs at the trial, that in June, 1833, an agent of the plaintiffs, verbally agreed on their behalf to purchase from the defendant a negro man at the price of $460, and that the defendant agreed that he would deliver the negro man, upon the payment of that sum. That on the 5th of July, 1833, the negro man then being in the jail of the county, in the custody of the sheriff, at the instance of the defendant for safe keeping, the agent of the plaintiffs paid to the defendant $460 for the negro, and at the same time took from him a receipt under his hand and seal for that sum, expressed to be in full payment for the negro man, and containing an express warranty that he was sound in mind and body, and a slave for life ; with an order of the same date written on the back of it by the defendant to the sheriff, to deliver the negro man to the agent of the plaintiffs, which were both produced and read at the trial. That the residence of the defendant where the contract was made, being five miles from the jail in which the negro was confined, and the defendant at the time busily employed, the order to the sheriff to deliver the negro man was given on the offer of the agent of the plaintiffs to go to the jail. That he on the same day proceeded with the order to the jail, and residence of the sheriff, and required of him to deliver the negro man. That a short time after his arrival, and on

going to the jail it was ascertained, that the negro man had cut his throat, and soon after died, and that after he was dead, and not before, the sheriff offered to deliver him to the agent, who declined to receive him. On this state of facts, the court below instructed the jury, 1st. That the parol agreement in June, 1833, between the agent of the plaintiffs and defendant, was not legal evidence in the cause, and that the contract of the 5th July, 1833, as evidenced by the receipt and order thereon, was the only contract on which the defendant was legally responsible ; 2ndly, that from the evidence stated in the exception, the title to the .negro man passed to the plaintiffs, by the payment of the purchase money, and order of delivery, as evidence of the contract of sale (the receipt) of the 5th July, 1833, and the order thereon, if they should believe from the testimony in the cause, that at the time of that contract, the negro man was *alive*, and *in being*, and therefore that the plaintiffs were not entitled to recover in the action ; and 3rdly, that from the evidence in the cause the plaintiffs could not maintain an action of *assumpsit* against the defendant for money had and received.

As to the first of these instructions no sufficient objection to it, is perceived. There was no note or memorandum in writing of the bargain, or agreement in June, 1833, that was rejected by the court, nor any thing to give it validity as a contract for the sale of the negro, but it was a mere naked verbal agreement, on the part of a known agent of the plaintiffs, and in their behalf, to purchase of the defendant, a negro man at the price of $460, and on the part of the defendant to deliver the negro on the payment of that sum ; with no delivery or acceptance actual, or constructive, nor any thing given in earnest to bind the bargain, or in payment in whole, or in part, and void under the statute of frauds, and therefore not properly admissible in evidence either as the foundation of the action, or to vary, or extend the written contract of sale of the 5th of July, 1833, evidenced by the receipt, and order on the back of it of that date. The verbal agreement of June, 1833, contemplated the payment

of the purchase money, and the delivery of the man, at one and the same time. Whereas, by the transaction in writing of the 5th of July, 1833, when the purchase money was paid, the place where it was entered into, being five miles from where the man was confined, an immediate actual delivery was dispensed with, and an order for delivery directed to the sheriff, who had him in custody, was agreed upon and accepted; which parol evidence of an agreement to make immediate, actual delivery would be inconsistent with, and have the effect to vary; and the court did right in rejecting such parol evidence, and confining the parties to the effect and operation of the receipt, and order of the 5th of July, 1833. The parol agreement of June, 1833, not coming within the principle on which a subsequent parol agreement not contradicting the terms of the original written contract, but extending only the time of performance may be admitted.

The second instruction however is obnoxious to exception, though not on the ground taken in argument, of a failure of consideration for the payment of the purchase money, for the want of actual delivery and acceptance by the plaintiffs, or their agent. The mere giving of the order for delivery and the acceptance of it by the agent of the plaintiffs, were not indeed an actual delivery and acceptance of the man himself, within the meaning of the 17th section of the statute of frauds, as the sheriff who held him for the defendant might have refused to deliver him, in which event there could not have been an actual acceptance of him by the plaintiffs, or their agent. Nor if standing alone, without any acceptance of, or assent to the order by the sheriff, with nothing given as earnest, or in part payment, nor any note, or memorandum in writing of the bargain, would it have been a sufficient constructive delivery, to gratify that branch of the statute which requires that "the buyer shall accept part of the goods sold, and actually receive the same." But distinguishable from the numerous cases in the books, in which virtual or constructive deliveries have been held to be sufficient. As where a pur-

session for a special purpose of him the vendee, and the ven‑ dor accepts the order, or agrees to do so, or where the goods are ponderous and incapable of being handed over from one to another, and the buyer so far accepts them, as to treat them as his own, by exercising acts of ownership over them, from which possession as owner may be inferred—or where the delivery is symbolical, such as the delivery of the key of the warehouse, in which the goods are lodged; or where actual delivery is impracticable, and can only be made by such symbolical means as the circumstances will allow, as in the case of a ship or cargo at sea.   Here the subject of the sale was an entire thing in being at the time, and capable of actual delivery; the circumstance of his being some miles from the place where the contract was made not being mate‑ rial, there was no exercise of right, no dealing with him by the plaintiffs as their own; and the mere naked acceptance of the order for delivery by the agent of the plaintiffs, could not amount, in the spirit of either of the classes of cases alluded to, to a delivery and acceptance of the negro man himself, actual, or constructive, within the meaning of the statute.   The person to whom the order was directed, and in whose custody the man was, might have refused to deliver him pursuant to the order, and the agent of the plaintiffs on seeing him might have refused to accept him, as he ulti‑ mately did.

But a delivery of goods actually sold, is not necessary to pass the right to the vendee, if there be any thing given in earnest, or a payment of the whole, or a part of the purchase money, or a sufficient note or memorandum in writing of the bargain.   Here there was an actual sale of the negro man, accompanied by payment of the whole of the purchase money, and a sufficient memorandum in writing of the bargain, whereby the property in the man passed from the defendant to the plaintiffs, and delivery was not necessary to give title, the property in the man being bound without.   It is no objection therefore to the instruction given below, that there

was not such a delivery and acceptance as is required in the 17th section of the statute of frauds.

But besides the instruction to the jury, that title to the negro man passed, the court directed them that the plaintiffs were not entitled to recover in the action, if they should believe from the testimony, that he was *alive* and in *being*, at the time the contract of sale was made, and it is to this branch of the instruction that the objection lies.

The receipt for the purchase money contains an express warranty of soundness, and it may have been, that the negro man was *alive*, and *in being*, at the time the contract of sale was made, and yet the plaintiffs be entitled to recover.

If the negro man had not cut his throat at the time of the sale, and was then sound within the terms of the warranty, but destroyed himself afterwards, (no matter how long or short a time after) the loss must fall upon the plaintiffs, for the property having passed to them by the sale, he was from that time at their risk.

But if he had cut his throat before, and that was unknown to the plaintiffs, or their agent, and was at the time of the sale, in that unsound, and dying condition, the warranty was broken, and the plaintiffs were under no obligation to receive him.

It is the received doctrine in this *State*, (though otherwise decided elsewhere,) that if a person sells an article (as a horse) with a warranty of soundness, which turns out to have been unsound at the time of the sale and warranty, the buyer may either keep the horse, and bring an action on the warranty; or rescind the contract by a return of the horse, or offer to return him, in a reasonable time, so that the seller is placed in *statu quo*, and sue for, and recover back the purchase money, or so much as he has paid, in an action for money had and received, which is the character of this action. And perhaps it is no where doubted, that where in such a case, an action is brought, by the vendor for the purchase money, the vendee may set up the breach of the warranty as a defence to the action. And no solid or substantial reason is perceived,

why, if in such a case the vendee may set up the breach of the warranty as a defence to an action against him for the purchase money, he may not, having paid the purchase money, recover it back in an action for money had and received. The contract is equally rescinded in both cases, and there is no more surprise, or danger of surprise in one, than in the other; and each has the effect to prevent a circuity of action.

This however is not the ordinary case of a sale and delivery of the thing sold. It was the intention of the parties, that the transaction should be consummated by á delivery of the negro man, which if the evidence be true, was not so consummated; but an offer only made by the sheriff to deliver him, after he was dead, and rejected by the agent of the plaintiffs, who, if the man had cut his throat before the contract of sale was made, was not only not bound to receive him when dead, his contract having been for the purchase of a living and sound man; but had a right to have rescinded the contract by declining to receive him in that dying condition, if the offer to deliver him had been made before his death. And the plaintiffs are entitled to recover back the money paid, which *ex æquo et bono*, the defendant ought to refund, the consideration having entirely failed. And it should have been so put to the jury. Whereas according to the instruction given, the plaintiffs would not be entitled to recover, if the man was *alive*, when the contract of sale was made, notwithstanding he might have cut his throat before that time, and was then dying, which we think was wrong. And that if such was his state at the time of the contract, the plaintiffs are as well entitled to recover, as if he had been then dead; the consideration failing in either case.

The third instruction, " that from the evidence in the cause, the plaintiffs could not maintain an action of *assumpsit* against the defendant for money had and received," is equally objectionable, if it is to be understood as a direction to the jury, that an action of *assumpsit* would not lie, to recover back the purchase money, admitting that the man had·cut his

throat before the contract of sale was made; and wrong, if it was given upon the ground, that from the evidence in the cause, the man's throat was cut after the contract of sale was made; as, if so to be understood, it was taking the question of fact from the jury, which it was their province to decide.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.