(Decided Feby. 26th, 1864.)

DOCTOR EDWARD McCENEY *vs.* EDWIN W. DUVALL.

WARRANTY: EVIDENCE.—In an action upon a warranty of the soundness of certain negro slaves, the plaintiff's witness having been examined, and having given other evidence, not objected to, proceeded to state declarations of Hester, one of the negroes named in the warranty made by her to the defendant, or in his presence, and in reply to the questions of the defendant, as to the length of time she had been suffering with disease, and her reasons for not mentioning it to him. HELD:

1st. That such declarations were inadmissible, as the statements made by the woman, referred not to her *present* diseased condition, but to an antecedent period.

2nd. That such declarations did not acquire the force of evidence, from the fact of their being made in reply to a question put by the defendant.

3rd. Nor did the acquiescence of the defendant make them evidence, as the very nature of the question put by the defendant, showed that he was wholly ignorant of the slave's condition, and was therefore unprepared for the answer; and in such case his silence could not be regarded as an acquiescence.

EVIDENCE: VARIANCE.—The defendant as tending to prove the soundness of the woman, asked a witness whether he, the defendant, was not in the *habit* of sending for a physician whenever his negroes were at all sick? HELD:

McCeney *vs.* Duvall.

That the evidence thus proposed to be offered had no tendency to sustain the issues, nor to rebut the presumption, if any was raised by the plaintiff's evidence, that the woman was unsound at the time of the sale.

PLEADING: EVIDENCE: WARRANTY.—The declaration stated that the defendant had warranted *"a negro woman named Hester,"* to be sound, &c.; and the covenant of warranty offered in evidence, was a receipt for the purchase money of *three slaves*, in which it was stated that the defendant did "warrant *them* sound," &c. HELD:

1st. That under *Article* 75 of the *Code, secs.* 2 and 3, this covenant of warranty might be considered distinctively as applicable to each slave.

2nd. That under this covenant, in case of the unsoundness of *one* of the slaves, it would not be necessary for the plaintiff to return or offer to return *all of them*, on discovering the unsoundness.

3rd. That where the action is brought on the warranty, the buyer may keep the property, and recover damages on the warranty, or rescind the contract by a return of it in a reasonsable time.

4th. That there was no necessity for the plaintiff in an action for damages on the warranty, to give notice within a reasonable time of the unsoundness of the slave. It was only incumbent on him to establish her unsoundness at the time of sale.

5th. That although there was some evidence that the slaves purchased by the plaintiff were in his possession before the date of the receipt, there being none as to the terms of the contract of sale, the agreement was executory, and merged in the written contract, which imported a consideration.

6th. That the defendant was entitled to produce and submit evidence to the jury to rebut any presumption that the disease existed in a former state at the time of sale, and was of a permanent nature, calculated to affect the value of the slave.

APPEAL from the Circuit Court for Anne Arundel county.

This was an action brought April 16th, 1863, by the appellee against the appellant, to recover damages for a negro woman named Hester, sold by the defendant to the plaintiff, with warranty that she was sound and healthy, but found to be unsound and unhealthy at the time of the sale. The declaration contains several counts:

1st. That the plaintiff agreed to purchase of the defendant a negro woman named Hester, a slave for life, the property of the defendant, who agreed to warrant that she was then sound and healthy, and in consideration thereof, the plaintiff purchased the woman, and by this warranty,

the defendant sold her to the plaintiff, yet she was not then sound and healthy.

2nd. That on or about the 10th of November 1859, the defendant, by warranting this woman, his property, to be then sound and healthy, sold her to the plaintiff, yet she was not then sound and healthy.

3rd. That the defendant, by his certain instrument in writing, sealed with his seal, and dated the 10th of November 1859, sold to the plaintiff a certain negro woman named Hester, and thereby warranted her to be sound and healthy, yet she was not then sound and healthy, of which the plaintiff afterwards gave notice to the defendant, and then tendered to him the return of said woman, and demanded of him repayment of the purchase money paid by the plaintiff to the defendant for said woman, but the defendant refused to receive the negro from the plaintiff, or to repay him the purchase money so paid for her.

4th. That the defendant, on or about the 10th of November 1859, by a certain instrument of writing, sealed with his seal, sold the plaintiff a certain negro woman named Hester, and thereby warranted her to be then sound and healthy, yet she was not then sound and healthy, of which the plaintiff afterwards gave notice to the defendant, but the defendant would not repay to him the money for which she had been sold, nor would he take back said negro. And the plaintiff claims $2,000.

The defendant pleaded several pleas:

1st. That the said woman, at the time of the alleged sale, was sound and healthy.

2nd. That the plaintiff did not give, and the defendant did not have, notice within a reasonable time after the alleged sale, that the woman was not sound and healthy, as is averred in the declaration, and that the plaintiff did not tender the return of the woman within a reasonable time after such alleged unsoundness was discovered by him to exist.

3rd. That he did not sell a negro slave named Hester to the plaintiff by warranting her to be sound and healthy, when she was not sound and healthy, and that the plaintiff did not give notice that the woman was not sound and healthy within a reasonable time after such alleged unsoundness was discovered by him.

4th. That he did not warrant the woman to be sound and healthy, in manner as alleged in the declaration.

Issues were joined on all these pleas, and during the trial three exceptions were taken by the defendant.

*1st Exception.* The plaintiff read in evidence the following instrument, the signature to which was admitted to be in the handwriting of the defendant:

"$3450.                              *Annapolis, Nov. 10th,* 1859.

Received of E. W. Duvall, the sum of thirty-four hundred and fifty dollars, being in full for the purchase of three negro slaves, named: Swain, aged eighteen years, Hester, aged twenty years, and Ann, aged thirteen years. The right and title of said slaves I warrant and defend against the claim or claims of all person or persons whatsoever; and likewise warrant them sound and healthy, and slaves for life. As witness, my hand and seal.

EDWARD McCENEY, (Seal.)"

The plaintiff then proved by the witnesses, Lamb and Bartholow, that he, the plaintiff, was in possession of negro Hester in November 1859, having bought her from the defendant, and she was then apparently a hearty and healthy woman, and was then, if sound, worth $1150 or $1200 for the Southern market; that he kept her a day or two, and then sent her to Campbell, in Baltimore, who shipped her, with other negroes, to New Orleans, for sale, from whence she was returned to Campbell, in Baltimore, on the last of March or first of April 1860, as unsound, and Campbell, after having her examined by a physician, returned her to the plaintiff, in Annapolis, telling him she was unsound. Bartholow says Campbell received her from

Duvall a few days before or after the 10th of November 1859, as he thinks; on reflection, witness thinks it was probably on the 10th of November that she was shipped to New Orleans.

The plaintiff further proved by the physicians, Doctors Beard, Brewer and Claude, that they had respectively examined the woman in March and April 1860, and found that she was suffering from *prolapsus uteri;* these witnesses particularly described her condition, and all concur in the opinion that it was a very *serious case,* of *long standing,* and must have *existed for some time prior to November* 1859; that the effect of the disease was seriously to impair the woman's usefulness and ability to labor, and was almost, if not quite, an incurable case.

The witnesses Lamb and Bartholow, were then recalled, and testified that after her return from New Orleans, the woman was of no value for the Southern market, that about here she was worth $250 or $260. The witness, Lamb, testified, that he first saw the woman, after her return, in April or May 1860, at Duvall's residence, in the presence of Duvall, McCeney and Basil; that Duvall sent for the negro, and told McCeney there was the woman, and asked him to take her back, and McCeney said he had not the money, or he would do so, but that he would see his counsel, to which Duvall replied, that would make no difference, as arrangements might be made as to the payment, &c. The witness then proceeded to state declarations of the woman, made to McCeney, or in his presence, and in reply to the questions of McCeney, as to the length of time she had been suffering with the disease, and her reasons for not mentioning it to McCeney, but the defendant objected to the admissibility of the said declarations of the said negro, but the Court overruled the objection, and allowed the said declarations to be given to the jury, and they were given accordingly, and to this ruling the defendant excepted.

2d *Exception.* The witness Lamb then stated, that in the interview before mentioned, McCeney asked the woman why she had not spoken before her sale, about her having this disease, to which she replied that she had been ashamed to speak of it, but that she had been so a long time. He further stated, that the woman was afterwards sold by Duvall, at the court house door, at public sale, though he does not remember the time, and witness bought her at that sale for $250 or $260, and afterwards sold her to Campbell for $15 more than he gave for her; he bought her to sell again. Bartholow being recalled, stated that Campbell bought the woman from Lamb, and sold her to a Mr. Logan, of South Carolina, for about $300, that she was sold to Logan without a guarantee, and after a statement of her condition. He further stated, that it was not their custom to examine women particularly at the jail, when they bring them, because they always receive a warranty of soundness, and that when Hester was first brought to Campbell's, witness talked with her, and she said nothing of her being diseased.

The plaintiff here rested his case.

The defendant then proved by *Basford,* that he was a near neighbor of McCeney in 1859, and is now; that he knew Hester before she was sold to Duvall; had seen her working in the crops like other hands, and in October 1859, she and her mother worked several days, with other negroes of McCeney, on the public roads, under charge of witness, as supervisor; the work was very laborious, and she kept up with it as well as any other negro. He also proved by *Jones,* that he is a near neighbor of McCeney, and had known Hester for many years; had frequently seen her working in the crop like other hands, and that in September 1859, being short of hands, witness hired her of McCeney to tend a threshing machine; that the work is of a very laborious character, requiring a great deal of stooping and lifting, and that being pressed for hands, he required her to work briskly and for a long time, and that

he could perceive no difference between her ability to work and that of the other negroes. These witnesses, on cross-examination, stated that their recollection of having seen Hester work, was of a general character, and that they could not speak positively of any particular occasion when they saw her work, except those specified by them, and that the work on the public road by her, was performed with a hoe.

The defendant then proved by Doctor Claytor, that he lives near McCeney, and for many years has been the attending physician on his place, and during all this time knew Hester as one of the hands, sometimes a house servant, but frequently in the crop, and that he never was called to attend her, or prescribe for her; that she occupied the same quarter with her mother, and, in his opinion, she could not have performed the work spoken of by Basford and Jones, in 1859, if she had been diseased with *prolapsus uteri*, but that he never examined her.

The defendant then, as tending to prove the soundness of the woman Hester when sold to the plaintiff, asked the witness whether Dr. McCeney was in the habit of sending for a physician whenever his negroes were at all sick, having proved by the witness that Dr. McCeney never attended himself to his negroes, and had no other physician but witness for many years; but the plaintiff objected to the admissibility of this question, and the Court sustained the objection, and refused to allow the witness to answer the same, and to this ruling the defendant excepted.

*3rd Exception.* The defendant then proved by Dr. John Ridout, Sen., that he had heard all the testimony previously given in the case, and, in his opinion, Hester could not have worked as proved by Jones and Basford, if she had then been laboring under the disease called *prolapsus uteri* to the extent described, without complaint; that from the description given by the physicians who examined the woman, witness would think the disease was not of

McCeney vs. Duvall.

recent origin, but he could not say how long it had continued; that a thorough *prolapsus* may take place in a short time, and may be produced by such causes as hard work at certain periods, a miscarriage, &c.; that he never saw the woman. Similar testimony was given by Dr. John Ridout, Jr. The defendant then offered the following prayers:

1st. That the plaintiff is not entitled to recover in this action under the pleadings in the cause, because of a variance between the proof in the case and the allegations in the pleadings.

2nd. That if the jury find that the only evidence of a warranty of the negro is that claimed to be contained in the receipt of the 10th of November 1959, then the plaintiff is not entitled to recover under the pleadings in the cause, though they may believe the other evidence of the plaintiff, because there is a material variance between the alleged warranty set forth in the declaration and that so offered to be proved by the plaintiff at the trial.

3rd. That unless the jury shall find from the evidence that the plaintiff returned or offered to return the three negroes named in the receipt of the 10th of November 1859, within a reasonable time after he discovered the alleged unsoundness of Hester, then the plaintiff is not entitled to recover in this action, though they may find Hester was unsound when sold, and that the plaintiff offered to return her within a reasonable time after he discovered her alleged unsoundness, and though they may also believe the other testimony in the case.

4th. That if they find the alleged warranty in the receipt of the 10th of November 1859, was given after the sale of Hester by the defendant to the plaintiff, then said warranty is void for want of consideration, and the plaintiff is not entitled to recover in this action, although they may believe the other evidence in the cause.

5th. If the jury find that the plaintiff offered to return Hester within a reasonable time after she was discovered to

be unsound, then such offer to return was a rescission of the contract of sale between the defendant and the plaintiff concerning said negro, and the plaintiff is not entitled to recover under the pleadings in this cause, although they may believe all the other evidence in the case.

6th. That though the jury may find that the defendant warranted the negro Hester as alleged by the plaintiff, and that she was unsound at the time of her purchase, and that the plaintiff offered to return her to the defendant in April 1860, still the plaintiff is not entitled to recover, unless the jury shall also find that the said offer to return was made within a reasonable time after she was first discovered to be unsound by those who possessed her at the time of such discovery of unsoundness, although the jury may believe the other evidence in the cause, and that the burden of proving the same is upon the plaintiff.

7th. That unless the jury shall believe, from the evidence that, at the time of the sale, the woman was diseased to an extent calculated to diminish permanently her usefulness as a servant, the plaintiff is not entitled to recover in this action, though they may believe she was warranted to be sound at the time of said sale, and that at that time she may have been diseased to some extent with *prolapsus uteri*, and although they may believe the other evidence in the case.

8th. That if the jury shall find that the woman Hester was warranted to be sound when she was sold by the defendant to the plaintiff, and that she was unsound at that time, and shall also find that the defendant sold her to Campbell in 1859, then the plaintiff is not entitled to recover, unless the jury shall also find that the plaintiff has paid back to Campbell the amount he received from him for said negro on such sale, or that the plaintiff gave an express warranty of soundness of said negro when he sold her to Campbell, upon which he is responsible to Campbell for the price he received from him for said negro.

The Court (BREWER, J.) rejected each and all of these prayers, and to this ruling the defendant excepted. The verdict was in favor of the plaintiff, and the defendant appealed.

The cause was argued before BOWIE, C. J., and GOLDS-BOROUGH and COCHRAN, J.

*A. B. Hagner*, for the appellant:

The evidence offered by the plaintiff of the pretended declarations of his own slave, as to her state of health before the sale, ought to have been rejected. Such testimony has ever been excluded by the laws of this State in controversies in which a white man is concerned. *Code, vol.* 1, *Art.* 37, *sec.* 1. *Groning vs. Devana*, 2 *Bailey, S. C. R.*, 192. *Law of Slavery*, 193. *Queen vs. Neale*, 3 *H. & J.*, 158. *Tongue vs. Negro Crissy*, 7 *Md. Rep.*, 463. *Negro Charles vs. Sheriff*, 12 *Md. Rep.*, 274. *Hughes vs. Jackson, Id.*, 463. Every consideration of public policy would dictate the rejection of such declarations given by an ignorant slave under the eye of her master, who was directly interested in her making such a statement. It was a statement, too, which, if made, could never be actually disproved, for as her health had always been good, no physician had ever examined her, and McCeney's loss of this case may be attributed directly to the admission of this illegal evidence.

For the doctrine of acquiescence, where white persons are concerned, he cited: 1 *Greenlf. Ev.*, secs. 98, 124, 199, 200, 99, 102, 110. 1 *Cowan's Phillips on Ev.*, 107. 3 *Id.*, 193, 198, 310. *Vail vs. Strong*, 10 *Verm.*, 463. *Nettles vs. Harrison*, 2 *McCord*, 232. Slaves have ever been disqualified as witnesses. *State vs. Bob*, 4 *Dallas*, 145. *People vs. Hall*, 4 *Cal.*, 399. *Jordan vs. Smith*, 14 *Ohio*, 199. *Iowa Dig.*, 768. *Iowa Code*, 322. The appellees rely on a distinction claimed to be made in such cases between original and hearsay testimony; on which point the

appellant relies on *Brown vs. Lester*, Georgia Rep., part 1, p. 77. *Dudley's S. C. Rep.*, 327. 7 *B. Mon.*, 88, 90. *Cobb on Slavery*, secs. 254, 255. In connection with the other evidence, the question sought to be put by the appellant as to his *habit* of sending for a physician whenever his negroes were at all sick, was proper, and should not have. been overruled. 1 *Greenlf. Ev.*, secs. 52, 56. 1 *Cowan's Phill. on Ed.*, 169, 170. 3 *Id.*, 432, 435, 439. *Cole vs. Hebb*, 7 *G. & J.*, 20. *Davis vs. Davis*, 7 *H. & J.*, 36.

First and second prayers:

The declaration alleged that the defendant warranted the soundness of the woman by his sealed instrument of November.10, 1859, whereas the only proof of a warranty offered was the paper which purports to be a receipt for the purchase-money of three negroes, with a warranty of title, and that they were sound and healthy, and slaves for life. This constitutes a material variance, as indicated in these prayers. 1 *Saund. Pl. & Ev.*, 1226, 1227. 1 *Greenlf. on Ev.*, secs. 58, 63, 64. 2 *Id.*, sec. 11. 1 *Cow. Phil. Ev.*, 205, 207, 208, 211. 2 *Spears*, 408. 4 *Rob. Pr.*, 286. *Tutts vs. McLeod*, 3 *How. Miss.*, 223. *Buckman vs. Haney*, 6 *English Ark. Rep.*, 339. *Penn vs. Stuart, Id.*, 41. *Brooks vs. Lowrie*, 1 *Nott & McCord*, 342. 1 *Ch. Pl.*, 296, 299, 305, 308, 312, 317. *Allen vs. Lancing*, 10 *Verm.*, 114. *Avery vs. Lewis, Id.*, 332. *Vail vs. Strong, Id.*, 460. *Furguson vs. Tucker*, 2 *H. & G.*, 188. *Walsh vs. Gilmor*, 3 *H. & J.*, 386, 408. *Wales vs. Walling, Id.*, 565. *Kent vs. Holliday*, 17 *Md. Rep.*, 393. *Sterling vs. Garrety*, 18 *Md. Rep.*, 468.

Third prayer: The contract proved being entire, it was incumbent on Duvall to have returned or offered to return the three negroes, that the parties might be placed *in statu quo*. *Franklin vs. Long*, 7 *G. & J.*, 407. *Lymore vs. Harker*, 15 *Miss.*, 101. 14 *Amer. Dig.*, 518, sec. 55. *Story on Sales*, secs. 240, 243, 245, 464. *Symond vs. Carr*, 1 *Camp.*, 363, 564.

4th prayer: The authorities are clear, that if the warranty is made *after* the sale, it is void for want of conside-ration. 1 *Saund.*, 1229. *Story on Sales, sec.* 356. *Roscorla vs. Thomas*, 3 *Adol. & Ell.*, 234. *Ch. on Cont.*, 458, *note* 1. The alleged warranty was given 10th November 1859, and is a receipt for money *previously* paid—part of it on the 5th November. The jury gave their verdict in the case on the 2nd November 1861. Lamb proved that Duvall bought Hester about two years previous, (which would be before 2nd November 1859,) that she staid at the jail a day or two, and was then carried to Campbell's, arriving there, at the latest, on the 10th November, having been several days the property of Duvall. There was, therefore, evidence to support the prayer, and the proposition of law being correct, it should have been granted.

Fifth prayer: The offer to return the goods rescinds the contract, if made in a reasonable time, and the action should be for money had and received. *Franklin vs. Long*, 7 *G. & J.*, 407. *Story on Sales, sec.* 431. *Curtis vs. Hannoy*, 3 *Esp. N. P. Rep.*, 83. *Rutter vs. Blake*, 2 *H. & J.*, 353. *Tayman vs. Mitchell*, 1 *Md. Ch. Dec.*, 496. *Thornton vs. Wynn*, 12 *Wheat.*, 193.

Sixth prayer: If the negro was found to be unsound, the defendant was entitled to notice of the unsoundness within a reasonable time *after it was first discovered*. If the plaintiff had sent her to Brazil, and her unsoundness had been discovered immediately on her arrival there, it would not be sufficient for the plaintiff to show that as soon as he heard of it, perhaps six months afterwards, he gave the notice. Such delay is not reasonable, and if the plaintiff has, *by his own act*, deprived himself of the power to give reasonable notice, he must bear the penalty. *Story on Sales*, 405, 426.

Seventh prayer: The principle announced in this prayer is sustained by the authorities. *Story on Sales, sec.* 362. *Murphy vs. Crain*, 12 *Texas*, 297. *Wade vs. De Witt*, 20 *Id.*, 400. *Gadsden vs. Raysor*, 9 *Richardson*, 276. *Brown*

*vs. Elkington,* 8 *Mees. & Wels.,* 132. *Fry vs. Throckmor-ton,* 2 *B. Mon.,* 450.

*O. Miller* and *F. H. Stockett,* for appellee:

1st. The ruling in the first exception was correct. The main question for the jury to decide, was whether the woman was unsound at the time of the sale. The nature of the disease was not such as to be apparent, and was such as a woman would naturally conceal, and be unwilling to speak of, and her declarations made *to the defendant, or in his presence, and in reply to his questions* as to the length of time she had been suffering with the disease, and her reasons for not mentioning it to the defendant, her master, are surely competent evidence to prove that she was suffering from this disease, and was therefore unsound at *the time of her sale* to the plaintiff. 1 *Greenlf. Ev.,* sec. 10. *Gray vs. Young,* 2 *Harper,* 38. *Welsh vs. Brooks,* 10 *Richardson,* 123. *Clarey vs. Overman,* 1 *Dev. & Batt.,* 402. *Roulhac vs. White,* 9 *Iredell,* 63. *Biles vs. Holmes,* 11 *Iredell,* 63. *Rowland vs. Walker,* 18 *Ala.,* 749. *Wilkinson vs. Mosely,* 30 *Ala.,* 562. *Feagin vs. Beasley,* 23 *Geo. Rep.,* 17. *Wodlow vs. Perreman,* 27 *Miss.,* 279. *Allen vs. Van Cleave,* 15 *B. Monroe,* 236. *Goodwin vs. Harrison,* 1 *Root,* 80. *Aveson vs. Lord Kinnaird,* 6 *East,* 188. *Batturs vs. Sellers,* 5 *H. & J.,* 117. *Kemp vs. McPherson,* 7 *H. & J.,* 320. *Ferguson vs. Tucker,* 2 *H. & G.,* 185, 189, 190. *Spencer vs. The State,* 20 *Ala.,* 24. *Hersey vs. Barton,* 23 *Verm.,* 585. *Cobb on Slavery,* secs. 254, 255.

2nd. The evidence offered by the defendant in the second exception, was properly rejected. The defendant's *habit* to send for a physician whenever his negroes were at all sick, did not tend to prove that this woman was sound when she was sold to the plaintiff, and besides, if it did tend to prove this, it was not admissible and competent evidence, because neither the defendant's *habits* nor his *declarations* can be given in evidence *in his own favor.* *Whiteford vs. Burckmeyer & Adams,* 1 *Gill,* 140. *Nusbaum*

*vs. Thompson*, 11 *Md. Rep.*, 557. *Foley & Woodside vs. Mason*, 6 *Md. Rep.*, 37.

3rd. The first and second prayers were properly rejected. They go upon the ground of variance between the warranty offered in evidence and that declared on. It will in all cases suffice if the *legal effect* of the contract be stated, and the party is not bound to follow the exact words of the contract, nor to state any part of the contract whereof there is no complaint, or no breach alleged. 1 *Chitty's Pleading*, 304, to 316, 293, 315. 2 *McCord*, 218. *Ferguson vs. Tucker*, 2 *G. & J.*, 183. Code, Art. 75, secs. 2, 3, 20. 18 *Md. Rep.*, 163, 164. The true construction of this instrument is, that each and all of these negroes were warranted sound, and the warranty is broken by the unsoundness of any one of them. *Chitty on Cont.*, 98, 99, (*Ed. of* 1855.) 1 *Parson's on Cont.*, 459. *Joliff & Bendell, Ryan & Moody*, 136.

4th. The 3rd and 5th prayers are erroneous, and were properly rejected. They go upon the theory that the offer to return the negro was a rescission of the contract, and assert that the plaintiff is *not entitled to recover under the pleadings* in this cause. These prayers, it will be observed, are not confined to any special count in the declaration, and if they had been, it is submitted that the weight of authority is in favor of the position laid down in 1 *Chitty's Pl.*, 355, that "where a special contract is still *open*, and has not been rescinded by *mutual consent*, it is necessary to declare specially, as if a horse, &c., be sold with a warranty of soundness, although it be unsound, and the purchaser *immediately* offers to return it, he cannot recover back the price on the count for money had and received, if *the vendor refuse to receive back the horse;* for the warranty can only be tried upon a special count, unless there was an express stipulation to take back, or unless there was actual fraud." *Chitty on Cont.*, 468, (*Ed. of* 1855.) *Payne vs. Whale*, 7 *East.*, 274. *Street vs. Blay*, 2 *Barn. & Adol.*, 456. *Speake vs. Sheppard*, 6 *H. & J.*, 81. *Walsh vs. Gilmor*, 3 *H. & J.*, 407, 408. *Kase vs. John*, 10 *Watts*, 107.

*Voorhees vs. Earl,* 2 *Hill,* 288. But even if the offer to return was a rescission of the contract, the plaintiff could still recover under the third and fourth counts in the declaration, which go for the refusal to repay the purchase money, and these prayers are therefore wrong, because they assert that the plaintiff is not entitled to recover under any count in the declaration. Again, the plaintiff, under any and all of the authorities, had the option either to treat the contract as rescinded and recover back the purchase money in an action for money had and received, or to keep the property as he did in this case, and sue for a breach of the warranty.

5th. The fourth prayer is erroneous. There is no evidence that the warranty was given after the sale, nor is there any evidence of any sale without warranty, nor would this warranty be void even if given after the sale, because the consideration for it is stated on its face, and besides it is under seal, which of itself, imports a consideration. Again, if there was any sale prior to the receipt and warranty, it was a verbal contract, the terms of which there is no evidence to ascertain, and such a verbal contract was merged in the subsequent written contract contained in the receipt, which is in and of itself the contract between the parties.

6th. The sixth prayer is also erroneous. The plaintiff was not bound to keep the negro in his possession. He had a right to send her away, as he did, to be sold, and all that was required of him in reference to an offer to return, if he chose to make such offer, was to do so in a reasonable time after *he* discovered her unsoundness, whether that may have been within a reasonable time after she was first discovered to be unsound *by those who possessed her at the time of such discovery* or not. But again, no offer to return was necessary to maintain an action on this warranty. *Fielder vs. Slarkin,* 1 *H. Black. Rep.,* 17. *Buchanan vs. Parnshaw,* 2 *Term Rep.,* 745. *Pateshall vs. Tranter,* 3 *Adol. & Ellis,* 103.

7th. The 7th prayer is wrong. There is not a tithe of evidence in the case from which the jury could find, that the woman was not diseased at the time of the sale to an extent calculated to diminish permanently her usefulness as a servant. On the contrary, if she was diseased at that time at all, (and the jury have found that she was,) all the witnesses in the case describe the disease to be of such a character as would permanently diminish her usefulness as a servant. But the law of the prayer is wrong, even if there was evidence to sustain it. The warranty is that the woman "was *sound* and *healthy*." That warranty is broken if at the time of the sale she was suffering from any disease which would to any extent diminish her *value* as a servant, either for sale or otherwise, or would diminish to any extent, either temporarily or permanently, her usefulness as a servant. *Ellon vs. Jordan,* 1 *Starkie,* 117. 2 *Saund. Pl. Ev.,* 916. *Com. on Cont.,* 407. *Lewis vs. Peake,* 7 *Taunt.,* 153. *Atterbury vs. Fairmanner,* 8 *Moore,* 32. *Ch. on Cont.,* 464. 2 *McL. & Rob.* 158. 2 *Id.,* 211. *Joliff vs. Bendell, Ry. & Mood.,* 136. *Watson vs. Denton,* 7 *Carr. & Payne,* 85. *Williamson vs. Allison,* 2 *East.,* 446. *McFerran vs. Taylor,* 3 *Cr.,* 270. *Crawford vs. Berry,* 6 *G. & J.,* 64.

8th. The eighth prayer is also erroneous. Whether the plaintiff has paid back to Campbell the money he received from him for the negro, or gave an express warranty of soundness when he sold her to Campbell, upon which he is responsible to Campbell, cannot affect the plaintiff's right to recover in this action on this warranty given by the defendant to him. If he sold her to Campbell without any warranty, he had a perfect right to receive her back, cancel the sale to Campbell, and then sue McCeney on his warranty. But there is no evidence in the record from which the jury could have found any sale from Duvall to Campbell. From all that appears in the record, Campbell was merely acting as the agent of Duvall, in shipping or sending this woman to a Southern market for sale.

GOLDSBOROUGH, J., delivered the opinion of this Court:

This was an action instituted in the Circuit Court for Anne Arundel County, by the appellee against the appellant, to recover damages on a receipt under seal containing a warranty of soundness of certain negro slaves, amongst whom, was the negro Hester, the subject of this controversy.

During the progress of the trial in the Court below, the appellant took three exceptions. One of them, to the admission of evidence objected to by him, the second to the rejection of evidence offered by him, and the third, to the rejection of the appellant's eight prayers.

The first exception contains the evidence of John Lamb, a witness produced on the part of the appellee, who, having been examined, and having given other evidence not objected to, proceeded to state declarations of negro Hester made by her to the appellant or in his presence, and in reply to the questions of the appellant, as to the length of time she had been suffering with the disease and her reasons for not mentioning it to him. It was to these declarations of Hester, as will more fully appear hereafter, that the appellant objected. The appellant, as tending to prove the soundness of Hester, asked Dr. Claytor whether he, the appellant, was not in the *habit* of sending for a physician whenever his negroes were at all sick, having proved by the witness that the appellant never attended himself to his negroes, and had no other physician but witness for many years. The Court refused to permit this evidence to go to the jury, to this refusal the appellant excepted. We are guided by the decisions of other States in disposing of the question in the first exception, as it is without precedent in this. It is insisted by the appellee that the declarations of negro Hester, under the circumstances, were admissible, either from the necessity of the case, or were a part of the *res gesta*, or because of the appellant's acquiescence. While it may be conceded that the authorities

cited by the appellee, do sustain the doctrine that the declarations of a slave to a physician or other persons, as to the symptons of the disease under which she is *then* laboring, are admissible, yet in view of the policy of this State as indicated by her legislation, and as the admission of such evidence is an exception, we feel ourselves justified in restraining the exception to the strictest limits. The statements made by Hester, from the character of the question put by the appellant, refer not to her *present* diseased condition which would assimilate this to the cases cited by the appellee, but to an antecedent period; to answer such a question, would require the exercise of memory, and not being evidence from necessity, nor under oath, their repetition by the witness is therefore but hearsay. We interpret the decisions to mean that the declarations of a slave, though admissible to prove the present nature of the disease and present condition of the party, they must be confined to the disease under which the slave is laboring at the time she makes her declarations, and cannot be so extended, as to make those declarations evidence to show that she had been diseased at a period anterior to that time, or to prove that the disease had existed for any considerable length of time. In a similar case cited in the *Georgia R.*, part 1st, page 79, the Court said: "This would be making the sayings of the negro evidence, to prove a distinct fact which is susceptible of being proved by other testimony, and therefore the same necessity does not exist for it as in the other case." This distinction is fully sustained by the case of *McClintock vs. Hunter, Dudley's S. C. R.*, 328; see also the other cases cited by appellant on this point.

It may be contended that the negro's declarations acquired the force of evidence, because they were extracted by the question of the appellant, we do not think so; if they would not be evidence (except in the restricted sense above referred to) when made to a physician they acquire no greater force under the circumstances of this case. They are

therefore not original evidence from necessity, nor are they to be considered as a part of the *res gesta*.

But it is contended that they are evidence from the acquiescence of the appellant. As we interpret acquiescence, it implies a consciousness or anticipation of the answer to be given to the question asked as well as consent to the answer. In such case, the appellant's silence might be considered as acquiescence. But the very nature of the question put by him, clearly shows that he was wholly ignorant of the slave's condition, and was thus unprepared for the answer; in such case his silence cannot be regarded as an acquiescence. For the above reasons we think that the first exception was well taken, and that the evidence objected to should have been excluded.

The evidence proposed to be offered by the appellant of his habit and custom in sending for a physician in case of the sickness of his negroes, had no tendency to sustain either of the issues, nor to rebut the presumption, if any was raised by the appellee's evidence, that Hester was unsound at the time of her sale.

We will now consider the appellant's prayers, the rejection of which formed the third exception:

The first and second prayers are predicated upon the assumption of a variance between the allegations in the pleadings and the proof to sustain them. We could entertain but little doubt that these prayers were right if the appellee had been required, in suing on the warranty under seal, to pursue the rules of pleading which existed prior to the adoption of the Code. In this case the negroes alleged to be warranted, were of independent value, each slave susceptible of separate valuation; and if the warranty was broken, parol evidence might be admitted to prove the injury sustained by its breach. See 3 *Howard's Miss. Rep.*, 223. We think that the second and third sections of Article 75 of the Code, applicable to the pleadings in this case, and the covenant of warranty may be considered distributively as applicable to each slave. In this view the decla-

tion is in conformity with the 20th form in the above Article.

The third prayer is predicated upon the hypothesis that the appellee could not recover in this action unless he returned or offered to return *all* the negroes named in the covenant within a reasonable time after he discovered the alleged unsoundness of Hester. The views we have expressed on the first and second prayers, are applicable to this; besides, it is expressly decided in the case of *Franklin & Armfield vs. Long*, 7 *G. & J.*, 419, that where the action is brought on the warranty, the buyer may keep the property and recover damages on the warranty, or rescind the contract by a return of it in a reasonable time. How far the law of this prayer might be correct if the appellee had brought his action for money had and received, it is unnecessary for us to decide, as the question is not before us.

The fourth prayer is objectionable because, though there is some evidence that the slaves purchased by the appellee were in his possession before the date of the receipt, there is none as to the terms of the contract of sale. The agreement was therefore executory and was merged in the written contract, which being under seal imports a consideration. 7 *G. & J.*, 420.

The fifth prayer being confined to Hester, embraces the same proposition as the third. Our views expressed as to that prayer, are applicable to this, so far as it relates to the return of Hester.

As to the sixth prayer, we see no substantial difference between the law of this prayer and that of the third. If the appellee was under no obligation to return Hester in order to maintain this action, then there was no necessity to give notice within a reasonable time of her unsoundness. It was incumbent on the appellee only to establish her unsoundness at the time of sale.

The seventh prayer should have been granted. It embraces the proposition that to constitute a breach of warranty of soundness, the disease must have existed in a for-

v. 21

med state at the time of sale, and have been of a permanent nature, calculated materially to affect the value of the slave. The appellant was entitled to produce and submit evidence to the jury to rebut any presumption that Hester was in this condition. See 20 *Texas R.*, 398. 7 *B. Monroe's Ken. R.*, 450.

In this view the appellant was entitled to the evidence of Lamb, who would testify that early in November 1859, Hester was a fine healthy girl seventeen or twenty years old; to the evidence of Basford and Jones, and Dr. Claytor, as to the work Hester was doing just before her sale; to the professional opinion of Dr. Ridout, Jr., predicated on the evidence proposed to be offered by the appellant; also to the admission of the appellee in his letter of the 13th of March 1860, to the appellant. We are therefore of opinion that the Circuit Court erred in its ruling on the first exception and in rejecting the appellant's seventh prayer, but ruled correctly in rejecting the evidence in the second exception, and in refusing the appellant's first, second, third, fourth, fifth, sixth and eighth prayers.

*Judgment reversed, and procedendo awarded.*

(Decided March. 4th, 1864.)