the verdict and judgment being against him, he appealed to this court.

The cause was argued before CHASE, Ch. J. BUCHANAN, and NICHOLSON, J.

*Taney*, for the Appellant, cited *Payne, et al. vs. Ba-comb*, 2 *Doug.* 651.

*Shaaff*, for the Appellee, cited *Esp.* 138, and *Hannan vs. Lee*, 1 *Harr. & Johns.* 131.

THE COURT said, that in the case of *Payne, et al. vs. Bacomb*, there was a count on a special agreement, and other counts, and as no agreement was proved, the plaintiff was permitted to recover on the other counts.

JUDGMENT AFFIRMED.

1808.

Rutter
vs
Blake

---

RUTTER vs. BLAKE.

APPEAL from *Baltimore* county court. The appellee brought an action of *assumpsit* against the appellant, on a promissory note drawn, on the 4th of July 1800, by him and *Edward Rutter*, deceased, whom he survived, for $1012 50, payable sixty days after date to *Edward Johnson*, or order, and by him endorsed to *William MacCreery*, or order, and by him endorsed to the appellee. The general issue was pleaded; and at the trial, the plaintiff produced and read the note in evidence. The defendant then offered in evidence an agreement made between him and the plaintiff, viz. That the promissory note, declared on in this case, was given for goods purchased by the defendant, and *E. Rutter*, (since deceased,) of the plaintiff. That the defendant, in the trial of this cause, may inquire into and offer evidence of the consideration of the note, and avail himself of the want of consideration for the whole, or any part of the note, as fully as the defendant might legally do, if the note had been originally given by *T. & E. Rutter* to the plaintiff, and the plaintiff had brought his action as payee of the note against the defendant. The defendant further offered evidence to prove, that he and *E. Rutter*, on the 1st of March 1800, at *Baltimore*

DECEMBER.

If the seller of goods affirms them to be of a particular quality, and the buyer receives them upon the credit of such affirmation, and they afterwards appear to be different, the purchaser may return the goods, and recover back the money, in an action for money had and received; or he may have his action without a return of the goods, if he give notice to the seller where they are deposited.

If A sells a horse to B, affirming him to be sound—B receives the horse, and sets out on a journey; but finds the horse to be unsound, and leaves him on the road, he may recover back the money paid, in an action for money had and received, if he gives notice to A where the horse is, and he is not bound to return the horse. But if B gives no notice to A, but sends the horse to vendue, and sells him for half

what he gave, B has elected to abide by his contract, and he cannot resort to A to make good the difference of price.

county, purchased three bales of blue *Guerrahs*, and that the note, with the indorsements, was given by *T. & E. Rutter* to the plaintiff, to secure the payment of the purchase money of these goods. That *E. Rutter*, since the execution of the note, died; and that *T. & E. Rutter* did not, at the time of the sale, or at any time previous to the arrival of the goods in the *West Indies*, as hereafter stated, examine the goods. That *T. & E. Rutter* shipped the goods to the Island of *Currocoa*, in the *West Indies*; and there sold them on the 2d of April 1800, for and on their account. That the three bales of goods were not blue *Guerrahs*, but goods of a different and inferior quality. That *T. & E. Rutter* had sustained damage and loss, by reason of the false representation and warranty made by the plaintiff, in the sale of the goods. The plaintiff then prayed the court to direct the jury, that if they should be of opinion, that the defendant and *E. Rutter* did receive and make sale of the goods in *Currocoa*, on their own account, and for their own use, the defendant is not in law entitled to any deduction for any loss or damage sustained by the defendant and *E. Rutter*, in consequence of any warranty of the goods by the plaintiff. The county court, (*H. Ridgely*, Ch. J.) delivered the following opinion: Generally, in the sale of goods, if the seller affirms them to be of a particular quality, and the buyer receives them upon the credit of this affirmation, and they afterwards appear to be different from what they were affirmed to be, the purchaser may return the goods, and recover back the money, in an action for money had and received, or he may even have his action without a return of the goods, if he give notice to the seller where they are deposited. As, where A sells a horse to B, affirming him to be sound, B receives the horse, and sets out on a journey, but finds the horse to be unsound, and leaves him on the road, he may recover back the money he paid for him, in an action for money had and received, if he gives notice to the seller where the horse is, and he is not bound to return the horse. It was the conduct of the seller that was the original cause of the horse being at a distance and out of his possession, and he must put up with the loss and inconvenience. So if a merchant in *Baltimore* buys goods, the seller warranting them to be of a particular description of quality, and the merchant, with

1808

Rutter
vs
Blake

out examining, sends them to the *West Indies*, where upon opening he finds them not to be of the quality warranted, he may store them, give notice to the seller, and recover back the money paid for them, in an action for money had and received; or he may bring his action on the special agreement of warranty, and recover damages for the full amount of the injury he has sustained, nor is he obliged to return the goods, or put himself to any further expense or trouble about them. This, I take it, was exactly the defendant's situation when the goods arrived in the *West Indies*. He had his option to do one of two things; first, to refuse to keep the goods, declining to go on with the purchase; or secondly, to accept the goods in lieu of those sold him, and to confirm the purchase by going on to sell them, and receiving the amount of sales. What does he do? Why he adopts the latter of the two alternatives—He sells the goods, and receives the money—not as agent for the seller, that is not intended, but upon his own account. This mode of proceeding by the defendant, however hard it bears upon him, I am of opinion has deprived him of a remedy here upon the warranty. Let us suppose A to sell a horse to B, with warranty that he is sound. B receives the horse, and riding him home discovers him to be unsound, and says nothing of this to A, but sends the horse to vendue, and sells him for half what he gave for him. Here he has elected to abide by his contract, and I take it he can never resort to the original seller to make good the difference of price. I think the cases I have put are similar to the case before the court, and that the warranty, if any made, cannot avail the defendant so as to entitle him to a deduction of the warranty for any damage or loss by him sustained. Suppose the plaintiff had received the goods on sale, with warranty to him, and has paid the amount—if he does not recover of the defendant, neither can he recover of the person who sold them to him; the defendant has put it out of the plaintiff's power; for the defendant, having sold the goods, the plaintiff cannot return them, or give notice to the person who sold them to him where they are. Therefore it may be that the plaintiff paid the price of first quality goods; and if he should not be permitted to recover against the defendant, he will lose the difference of price between goods of the best and goods of inferior quality. Whereas,

had the goods not been disposed of by the defendant, the plaintiff could have returned or given notice where the goods were stored, and recovered over from the person who sold to him. It is true, that if at the time of making this note any particular agreement or understanding took place between the plaintiff, or his agent *MacCreery*, and the defendant, that a deduction should be made on account of any defect in the goods, that the defendant has his remedy in equity by making them parties, or in *this court*, if he can prove the note was delivered with such intention or understanding of the parties. The defendant excepted, and the verdict and judgment being against him, he brought this appeal.

The case was submitted to the court without argument.

*W. Dorsey*, for the Appellant.
*Purviance* and *S. Chase*, Jr. for the Appellee.

JUDGMENT AFFIRMED.

---

## DRURY & BENNETT vs. NEGRO GRACE.

APPEAL from *Anne-Arundel* County Court. In this case the appellee petitioned for her freedom, and the following case was stated for the opinion of the county court. *Zebedee Wood*, being possessed of sundry negro slaves, and among others of the petitioner, on the 10th of February 1788, duly made his last will and testament, containing this clause—"I devise and bequeath the whole of my property, real and personal, to my beloved daughter *Mary Ann Wood*, to her and her heirs for ever, *and in case she dies without lawful issue*, then the whole of my said property is to be possessed by my dear wife *Ann*, during her widowhood, and no longer, and at her death or marriage to be sold at public sale, and five hundred pounds current money, out of the money arising therefrom, to be her heirs for ever; and in case she dies without lawful issue, then the whole of my said property is to be possessed by my dear *wife A, during her widowhood*, and no longer; and at her death or marriage, to be sold at public sale, and the money arising therefrom to be equally divided between H, C and N." M W obtained possession of the property so devised to her, and died in the 17th year of her age, unmarried, and without having any issue, having by her will manumitted all her slaves. A, the widow of the testator, is now living, having in the life time of M W married one R B. Negro *Grace*, one of the slaves manumitted by M W, petitioned for her freedom against H, C and N—*Held*, that the limitation over in the will to A, during her widowhood, constituted a good executory devise, because it was to take effect on the contingency of M W dying without leaving issue at the time of her death, and that the petitioner is not entitled to her freedom.

Where the limitation over is in fee after an indefinite failure of issue, it is not good as an executory devise, because of its tendency to create a perpetuity by rendering property unalienable.

In expounding wills, the first and great principle to be observed is, that the intention of the testator is to prevail, unless such intention is opposed by some rule of law.

Z W, by his will, devised as follows: "I devise the whole of my property, real and personal, to my beloved daughter M W, to her and