## Ernest B. Horn *vs.* Samuel D. Buck.

*When an Appeal will not be dismissed—Right of action for Breach of Warranty—When the province of the Jury to determine what constitutes a Warranty—When the province of the Court—Measure of Damages for a breach of Warranty—When purchaser not entitled to rescind Contract of sale and return the property for Breach of warranty, and recover back the Purchase money, but his remedy must be by suit on the Warranty—What does not constitute a Rescission of a Contract of sale of Personal property.*

An appeal will not be dismissed upon the ground that the bill of exceptions was not signed in time, it appearing that the time within which it should have been prepared and submitted to the Court as required by a Rule of Court, was expressly extended by the Court, and the delay that thereafter occurred in signing it, was not through any fault of the appellant or his attorney.

To entitle a party to recover for the breach of warranty in the sale of a mare, it is not necessary for him to offer to return the animal.

In cases of oral contracts, it is the province of the jury, upon considering all the circumstances attending the transaction, to decide as to the existence of the ingredients necessary to constitute a warranty. But in cases of written contracts, the Court is the expositor.

In an action to recover for an alleged breach of warranty in the sale of a mare, the evidence on the part of the plaintiff was that the negotiation for the purchase began on the 20th of May, 1876; the price asked was $175; plaintiff said "I will take her if she is sound;" defendant said "she is perfectly sound." On the 23rd, plaintiff wrote to defendant saying, "if the mare is sound I will take her." On the same day defendant wrote to plaintiff, "the mare is sound to the best of my knowledge; you can have her at any time." On the same day plaintiff sent for the mare, took her away and drove her the same afternoon; kept and used her till the 26th, when defendant called for the money. Plaintiff then called defendant's attention to the fact that he had discovered "a flinching, giving away or lameness in her hind leg." The defendant said "it is all right, she is sound as a dollar,"

and a check was handed to him for $175. The plaintiff kept the mare and used her nearly every day until July 1st. Then he left the city, placing her at a livery stable; he returned about the last of August or the first of September. In the meantime the mare being lame, had been in the care of a farrier, about the 27th of July, and the latter part of August. About the 1st of September, the mare was tendered to the defendant, who refused to receive her, and she was sent by the plaintiff to the establishment of certain horse auctioneers, and was sold for whom it might concern, on 20th December, 1876, for sixty dollars. HELD:

1st. That upon this state of facts, the plaintiff was not entitled to recover the whole amount of the purchase money.

2nd. That in a case of this kind, the measure of damages for a breach of the warranty, was the difference between the value of the mare, with the defect warranted against, and the value she would have had without that defect.

3rd. That the plaintiff having incurred expenses for the keep and doctoring of the mare, ought to be allowed for the same, and on the other hand should be charged for whatever benefit and advantages he derived from using her.

It has been held in this State, that for a breach of warranty of soundness, a purchaser may at his election in a reasonable time, rescind the contract, return the property or offer to return it, and recover back the purchase money. But it seems that the modern doctrine established elsewhere in the United States and in England, is that where the contract of sale has been executed and the title has vested in the purchaser by delivery and acceptance, where there is no fraud and no agreement to return, he is not entitled to rescind, and return the property for breach of warranty, but his remedy in such case is by suit on the warranty.

Where a purchaser offers to return the property, but retains the possession and afterwards exercises rights of ownership over it, and has it sold at auction without any notice to the vendor, such offer, though made in a reasonable time, does not amount to a rescission of the contract of sale.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

*Exception.*—The plaintiff offered two prayers, as follows:

1. That if the jury shall find from the evidence that the plaintiff purchased from the defendant the mare mentioned

in the declaration in this case, and that at the time of the said purchase the defendant warranted the said mare to be sound; and they shall further find that at the time of said purchase and sale, the said mare was unsound, and that the plaintiff paid the full amount of the purchase money for the said mare to the defendant, and that the plaintiff offered to return the said mare to the defendant within a reasonable time after discovering her unsoundness, and demanded a return of the purchase money, and the defendant refused to return the purchase money, then their verdict must be for the plaintiff.

2. That if the jury find for the plaintiff, the measure of damages is the amount of money they may find the plaintiff paid the defendant with interest from the date of such payment, together with such expenses as they may find he was subjected to, by reason of the unsoundness of the said mare up to the time of the tender of the animal to the defendant, should the jury find such tender.

The defendant offered the seven following prayers:

1. If the jury find that the defendant sold the plaintiff the mare in question in May, 1876, and that the said mare was, at the time of said sale, in point of fact sound, then their verdict must be for the defendant, even though they may find that said mare became unsound afterwards, and the burden of proof is on the plaintiff to prove to the satisfaction of the jury, that the said mare was unsound at the time of the said sale.

2. That unless the jury believe from the evidence that at the time of the sale, the mare in question was diseased to an extent calculated to diminish permanently her usefulness and value, the plaintiff is not entitled to recover in this action, though they may believe she was warranted to be sound at the time of sale, and although they may believe the other evidence in the case.

3. If the jury find that in May, 1876, the plaintiff bought the mare in question of the defendant, and that at the time

of said purchase, the said mare had an obvious defect in her right hind leg, causing her to flinch, or give way in said leg in going down hill, and that the plaintiff before purchasing said mare, tried her on several occasions, by driving her *to* a buggy, and that the plaintiff *saw and knew* the existence of such defect in said mare, then their verdict will be for the defendant, notwithstanding they may find the defendant warranted said mare sound, unless they further find that the said mare was otherwise unsound or diseased at the time of said sale.

4. If the jury find from the evidence that on the 23rd of May, 1876, the defendant sold a certain mare to the plaintiff, and that on the day of said sale, the defendant, in reply to a letter of the plaintiff, wrote a letter to the plaintiff containing these words, "the mare is sound to the best of my knowledge," and containing no other words relating to the quality of said mare; and that the defendant then sent the said letter to the plaintiff, who then received the same; and that the plaintiff thereupon, without objection or any further communication with the defendant, sent to the defendant for the said mare, that the defendant then delivered the said mare to plaintiff, and that the plaintiff then accepted said mare, thereby consummating said sale, then the jury are instructed that said language so used by the defendant in his said letter imports a qualified warranty only on the part of the defendant, and unless the jury find that the said mare was then unsound, and that the defendant *then knew* her to be unsound, they must find their verdict for the defendant.

5. If the jury find that in May, 1876, there were certain negotiations between the plaintiff and defendant for the sale of the mare in question to the plaintiff, and that subsequently, on the 23rd day of said month, the defendant, in reply to a note from the plaintiff, sent him the letter offered in evidence of that date, and that the plaintiff having received the same, thereupon, without any

further communication passing between them, sent for and got the mare from the defendant, and accepted the same on the terms of that letter alone, thereby consummating the sale of said mare, then the jury are restricted to the terms of the said letter as the only evidence of warranty in the case, and they cannot consider anything else testified to or offered in evidence as proof of warranty of the mare in question by the defendant. And in order to constitute an acceptance within the provisions of the Statute of Frauds, there must have been an actual acceptance on the terms of that letter, with the intention of taking possession of the mare as owner, upon the warranty contained therein.

6. If the jury find that the defendant, on or about the 23rd day of May, 1876, sold and delivered the mare in question to the plaintiff, and, at the time of the sale, the defendant warranted said mare sound, and shall further find that the said mare had at that time a temporary and curable malady only, which would, with ordinary care, disappear and leave her in a short time, then the jury are instructed that such malady was no breach of warranty of the soundness of said mare, and should they so find, the plaintiff cannot recover.

7. If the jury find from the evidence that the only warranty of the mare in question given by the defendant, was that contained in his letter to the plaintiff of May 23rd, 1876, and that the plaintiff accepted said mare on the terms of the said letter, then their verdict will be for the defendant, unless they further find that said defendant knew that said mare was unsound before said sale. And in order to constitute an acceptance within the provisions of the Statute of Frauds, there must have been an actual acceptance by the plaintiff, with an intention of taking possession as owner upon the terms of said letter.

The Court (GAREY, J.,) granted the first prayer of the plaintiff, and also the second with a modification; granted the first, second and sixth prayers of the defendant, and

also his fifth and seventh with modifications, and rejected his third and fourth prayers.

The defendant excepted to the rejection of his third and fourth prayers, and to the modification of his fifth and seventh, and also to the granting of the plaintiff's prayers, and specially to the granting of his first prayer, upon the ground that it did not define what constituted warranty. The verdict and judgment being for the plaintiff, the defendant appealed.

The cause was argued before BARTOL, C. J., STEWART, MILLER and ALVEY, J.

*W. Burns Trundle,* for the appellant.

The first point is whether or not there was an express warranty by the vendor at the time of the sale of the mare in question. The rule, of course, is *caveat emptor.* There is no implied warranty upon the sale of a horse. In order that the vendee may recover, when he claims the animal was unsound at the time of the sale, he must, in addition to such proof of unsoundness, further show either an express warranty, or fraud on the part of the vendor.

What are the ingredients that constitute such a warranty, is a question of law for the Court; whether or not those ingredients exist is a question of fact for the jury.

The plaintiff's first prayer, therefore, should have been refused, inasmuch as it leaves a matter of law, namely— what constitutes a warranty, to the jury, to which special exception was taken below. *Osgood vs. Lewis,* 2 *H. & G.,* 495, 518; *Oliphant's Law of Horses,* 74; *Jackson vs. Wetherall,* 7 *S. & R.,* 482; *Hyatt vs. Boyle,* 5 *G. & J.,* 118.

The measure of damages given in the plaintiff's second prayer is palpably erroneous. The record shows that the plaintiff paid for the mare $175; that he used her nearly every day from May 23rd to July 1st, 1876. She then became sick or lame, and was taken to a farrier, July 27th,

who cured her ; and the plaintiff subsequently, on December 20th, sold her for $60.   Manifestly, the plaintiff should recover no greater damages than he has sustained.

If it be viewed as a special action on the alleged warranty, under the fifth and sixth counts in the *narr.*, the true measure of damages is the difference between the value of the mare, with the defect warranted against, and the value which she would have borne without that defect. The price paid is strong *prima facie* evidence of the latter value.   The price the plaintiff got for her when he sold her, December 20th, *after* she had been lame, together with the proof on the part of the plaintiff that he used her almost constantly for more than five weeks next after he bought her, and *before* she required any treatment, was evidence from which the jury could have estimated the former value, if they found a warranty and the breach thereof; and the *difference between those values* alone the plaintiff was entitled to recover.   *Lane, Adm'x of Horine vs. Lantz,* 27 *Md.*, 211.

There was some evidence of certain expenses paid by the plaintiff for the keep, care and doctoring of the mare, but these were more than counterbalanced by the benefit and advantage derived by the plaintiff from the services of the mare, having, as he himself admitted, used her almost constantly during the whole period of his stay in the city, from the time of his purchase, May 23rd, to the date of his departure, July 1st, 1876.

If she was fit for daily use, she could not be valuelsss. Even if she was then worth no more than she subsequently brought at auction—being lame when sold—to wit, $60, it was only *the difference* between such value and the value, if sound, at the sale—in this case the price paid, $175— to which plaintiff was entitled.

If to this the expense incurred by plaintiff by reason of the alleged unsoundness of the mare be added, yet the rule is not changed.   The actual value of the animal at

the time of the sale, that is, its value with the supposed defect, when there is evidence from which that value may be estimated, must not be ignored in giving a measure of damages to the jury. *Lane, Adm'x vs. Lantz,* 27 *Md.,* 216.

If it be viewed as an action of *indebitatus assumpsit* on the common counts, yet the measure of damages is, in this case, the same. The plaintiff, having kept the mare more than 90 days from the day of sale, on or about the 1st of September, 1876, tendered her to the defendant, as if electing to rescind the contract. This, upon the theory of a breach of warranty at the time of the sale, he might do. The defendant, conscious of no breach on his part, refused to accept the mare. What then? The plaintiff might have left her on the highway, at the defendant's risk, giving him due notice, and in an action for money had and received, have recovered, on proof of breach of warranty, the money he paid for the mare. *Rutter vs. Blake,* 2 *H. & J.,* 354.

Instead of that, without any notice to the plaintiff, he sends the mare to certain horse auctioneers on Calvert street, and sells her, for whom it might concern, for $60.

*E. Calvin Williams,* for the appellee.

The appeal should be dismissed, because the bill of exceptions cannot be considered by this Court, as it was not signed in proper time. The January Term of the Court of Common Pleas, during which the bill of exceptions should have been signed, had expired before it was signed, as had also the time in which, by the order of the Court, the appellant had to present his bill of exceptions, and have it passed upon. Every opportunity that could possibly have been given was given him, and no bill of exceptions was filed in the proper time. *Wheeler vs. Briscoe,* 44 *Md.,* 308; *Balto. Bldg. Ass'n, No. 2, &c. vs. Grant,* 41 *Md.,* 565; *Ex parte Bradstreet,* 4 *Peters,* 102; *Ewell vs. Taylor & Ball, Adm'r, et al.,* 45 *Md.,* 573.

If, however, the Court should decide to consider the appeal, the Court of Common Pleas should be sustained. The law governing the case was fully and properly given to the jury by the two prayers of the plaintiff, as granted by the Court.   The first prayer stated the law of warranty and sale as applicable to this case.   *Osgood vs. Lewis*, 2 *H. & G.*, 495 ; *Lane, Adm'x vs. Lantz*, 27 *Md.*, 211, *&c.; Franklin vs. Long*, 7 *G. & J.*, 419 ; *Rutter vs. Blake*, 2 *H. & J.*, 353 ; *Clements vs. Smith's Adm'r*, 9 *Gill*, 159 ; *Taymon vs. Mitchell*, 1 *Md. Ch. Dec.*, 496 ; *Miller vs. Grove*, 18 *Md.*, 242.

The second prayer stated the correct measure of damages.   *Sedgwick on the Measure of Damages*, 287 *to* 291, *(marginal.)*

All that could properly have been granted was given in the defendant's prayers as granted, and in the plaintiff's prayers.   The appellant's third and fourth prayers were properly rejected.  1 *Parsons on Contracts*, 576, *n. H., and cases there cited* ; *Chitty on Contracts, (Ed.* 1860,) *pp.* 479 *and* 480 ; *Cave vs. Coleman*, 3 *M. & R.*, 2 ; *Cook vs. Moseley*, 13 *Wendell*, 277, *&c. ; Lane, Adm'x, &c. vs. Lantz,* 27 *Md.*, 211 ; *Wood vs. Smith*, 5 *Man. & Ry.*, 124 ; *Osgood vs. Lewis*, 2 *H. & G.*, 495 ; *Franklin vs. Long*, 7 *G. & J.*, 419.

The modifications made to the appellant's fifth and seventh prayers were properly made.  17*th sec. Stat. of Frauds, Alex. Brit. Stat., &c.*, 553 ; *Jones & Co. vs. Mechanics' Bank of Baltimore, Garn.*, 29 *Md.*, 287 ; *Clarke vs. Marriott*, 9 *Gill*, 335 ; 3 *Parsons on Contracts*, 44 ; *Atwell vs. Miller & Mayhew*, 6 *Md.*, 10 ; *Hall & Loney vs. Richardson*, 16 *Md.*, 412.

BARTOL, C. J., delivered the opinion of the Court.

In this case the verdict was rendered in favor of the appellee, plaintiff below, on the 21st day of April 1877, and judgment entered thereon the same day ; on the 25th

day of the same month the defendant appealed. During the trial one exception was taken by the appellant to the ruling of the Court on the prayers, and the bill of exceptions was signed on the 9*th day of July* 1877. The appellee contends that this was too late ;—that the bill of exceptions cannot be considered by this Court, and for that reason has moved to dismiss the appeal.

It appears from the record, and the proof taken on the motion, that on the 28th day of April 1877 a bill of exceptions prepared by the appellant's attorney was tendered to the Judge to be signed, but the attorney for the appellee objected to the bill of exceptions so tendered ; and stated that he proposed to leave Baltimore on the following Monday (April 30th) for the West. Whereupon the Court extended the time for filing the bill of exceptions till the first day of June 1877.

It appears that the appellee's attorney returned to Baltimore about the 17th day of May, but he did not notify the appellant or his attorney of his return. We lay no stress upon the notification given by him to the witness Wm. Edwin Trundle, because it is proved by the latter, that he did not inform his brother, the appellant's attorney, that he had no connection with the case, and paid no attention to the matter. It appears by the affidavit of appellant's attorney that he called several times during the month of May at the office of Mr. Williams, the attorney of appellee, to inquire if he had returned from the West, and in fact had no knowledge of his return, till after the first day of June, when he immediately made an appointment with Mr. Williams to go into Court, and have the matter of the bill of exceptions settled. They met in Court for that purpose about the 9th day of June. But Mr. Williams not agreeing to the form of the bill of exceptions tendered by appellant's attorney, was requested by the Judge to prepare a form of exception, according to his own idea—and the Court directed the attorneys each to

submit objections in writing to the form of exceptions prepared on the other side; which was accordingly done on or about the 12th day of June.

. The delay which occurred thereafter is sufficiently explained by the press of business in the Court, and the physical indisposition of the Judge, which prevented him from giving his attention to the matter until the 9th day of July 1877, when the form of the bill of exceptions was settled and the same was signed and sealed on that day. The appellee's attorney objected, and the Judge affixed his signature, stating that he did so, after the Term had elapsed, at the instance of appellant, leaving the question of right between the parties to be determined by this Court.

There is some conflict in the recollection of the witnesses on minor points, but we have stated the facts substantially as we find them in the proof; and we think the motion to dismiss ought not to prevail.

The appellant's attorney seems to have used due and reasonable diligence in preparing, and presenting his bill of exceptions. The delay in signing it was first occasioned by the absence of Mr. Williams from the city. As the length of his absence was not definitely known, it was his duty to give notice of his return to the appellant or his attorney.

This he failed to do; due diligence appears to have been used by the appellant's attorney to ascertain if he had returned, so as to have the bill of exceptions presented to the Judge by the first day of June, according to the order of the Court. The failure to accomplish this was owing to the omission on the part of Mr. Williams to give notice of his return to the city. Afterwards the delay which occurred was not from any fault or laches of the appellant or his attorney, and in our judgment the bill of exceptions was properly signed and was in time.

The Rule of Court, a copy of which is in the record, requires the bill of exceptions to be prepared and sub-

mitted to the Court, during the sittings of the term at which it shall have been taken, in every case, *unless otherwise expressly allowed by the Court.* Here the time was expressly extended till the first day of June. The delay which thereafter occurred was not through any fault of the appellant. In our opinion the action of the Court on the 9th day of June, was equivalent to an allowance of further time by the Court, and under all the circumstances we think the appellee's objection to the delay ought not to be sustained.

The motion to dismiss is therefore overruled.

The suit was brought to recover for an alleged breach of warranty by the appellant, in selling to the appellee an unsound mare, warranted to be sound.

It is unnecessary to state at length the testimony contained in the bill of exceptions, it is in many respects contradictory, as generally happens in "horse cases," especially where the parties litigant are witnesses.

The only exception, was taken to the ruling of the Court below on the prayers, these are based exclusively on the evidence; no reference being made therein to the pleadings, these need not be noticed.

The appellee offered *two* prayers which were granted, and the appellant *seven*, of these all were granted except the *third* and *fourth*.

It is stated in the bill of exceptions that the *fifth* and *seventh* were granted, with modifications by the Court, and exception was taken to the modifications; but it does not appear in what the modifications consisted; we cannot therefore express any opinion thereon. It was intimated in the argument that the modifications were made by adding to the prayers the concluding sentence, declaring what constitutes an acceptance under the Statute of Frauds. If this be so, we find no error therein.

We direct our attention to the only matters embraced in the exception, viz., to the first and second prayers

of the appellee, and the *third* and *fourth* of the appellant.

1. The *first* prayer submits to the jury to find that at the time of the purchase the defendant *warranted the mare to be sound,* and claims the right to recover if the jury shall so find, and shall find that she was at that time unsound; and shall further find that the plaintiff paid the full amount of the purchase money, and that he offered to return the mare in a reasonable time after discovering her unsoundness.

This prayer is free from objection and it was not error to grant it. Indeed, to entitle the plaintiff to recover for the breach of warranty, it was not necessary for him to offer to return the mare; as was decided in *Franklin & Armfield vs. Long,* 7 *G. & J.,* 407, and *Lane vs. Lantz,* 27 *Md.,* 211.

Special objection was made to this prayer in the Court below, on the ground that it submitted a question of law to the jury, in leaving to them to determine whether there was a warranty, without defining what constitutes a warranty. But we do not think the objection was well taken. Sometimes it is properly a question of law for the Court to determine, whether certain words constitute a warranty; this rule applies where the contract is in writing. But as said in *Osgood vs. Lewis,* 2 *H. & G.,* 518, "in cases of oral contracts; on the existence of the necessary ingredients to such a warranty, it is the province of the jury to decide, upon considering all the circumstances attending the transaction. But of written contracts the Court are the expositors."

2. The *second* prayer of the appellee relates to the measure of damages; and instructed the jury if they should find for the plaintiff, "the measure of damages is the amount of money they may find the plaintiff paid the defendant, with interest from the date of such payment, together with such expenses as they may find he was sub-

jected to, by reason of the unsoundness of the said mare, up to the time of the tender of the animal to the defendant, if the jury should find such tender."

We think it was error to grant this prayer.

The evidence on the part of the appellee was that the negotiation for the purchase began on the 20th day of May 1876, the price asked was $175; plaintiff said "I will take her if she is sound;" defendant said "she is perfectly sound." On the 23rd plaintiff wrote to defendant saying "if the mare is sound I will take her." On the same day defendant wrote to plaintiff as follows:

"BALTIMORE, *May* 23, 1876.

"MR. SAM BUCK,

"*Dear Sir:*—The mare is sound to the best of my knowledge; you can have her at any time.

"Yours, very truly,

"ERNEST B. HORN."

On the same day plaintiff sent for the mare and took her away, and drove her the same afternoon; kept and used her till the 26th, when defendant called for the money. According to plaintiff's testimony, he then called defendant's attention to the fact that he had discovered "a *flinching*, giving away or lameness in her hind leg." The defendant said "*it is all right, she is sound as a dollar,*" and a check was handed him for $175. The plaintiff kept the mare and used her nearly every day till July 1st. Then he left the city, placing her at a livery stable; he returned about the last of August or first of September. In the meantime the mare being lame had been in the care of a farrier about the 27th of July—and the latter part of August.

About the 1st of September the mare was tendered to the defendant, who refused to receive her, and she was sent by the plaintiff to the establishment of McGee & Par-

lett, horse auctioneers, and was sold for whom it might concern, on December 20th 1876 for $60.

Upon this state of facts it is clear the plaintiff was not entitled to recover the whole amount of the purchase money.

The measure of damages in a case of this kind, for a breach of the warranty, is the difference between the value of the mare, with the defect warranted against and the value she would have had without that defect. *Lane vs. Lantz*, 27 *Md.*, 216.

In that case it was said that the price paid, in the absence of other proof, is evidence of the value of the animal, if sound. From this is to be deducted the amount she was worth, in her actual condition at the time of the sale, and the difference would constitute the true measure of damages. In this case there is evidence that she was of some value; she was actually used by the plaintiff for some time, and was sold on the 20th day of December for sixty dollars.

There is evidence that the plaintiff incurred expenses for the keep and doctoring of the mare while in his possession, for which he ought to be allowed; on the other hand he is chargeable for whatever benefit and advantage he derived from using her.

It is contended on the part of the appellee, that having elected to rescind the contract, and having offered to return the mare to the appellant, he is entitled to recover the whole purchase money.

It has been held in Maryland that for a breach of warranty of soundness a purchaser may at his election, in a reasonable time, rescind the contract, return the property or offer to return it and recover back the purchase money. *Rutter vs. Blake*, 2 *H. & J.*, 353; *Franklin, et al. vs. Long*, 7 *G. & J.*, 407. But it seems the modern doctrine established both in England and elsewhere in the United States, is that where the contract of sale has been executed,

Horn *vs.* Buck.

and the title has vested in the purchaser by delivery and acceptance, where there is no fraud, and no agreement to return, he is not entitled to rescind and return the property, for breach of warranty, but his remedy in such case is by suit on the warranty. *Sedgwick on the Measure of Damages*, 286, 287, *m. (and note)* where the cases are collected. Mr. Benjamin in his work on Sales, states the law in the same way, (*2nd Ed., pp.* 741, 750.)

But in this case there was no valid rescission. The offer to return the property, even supposing it was made in a reasonable time, did not of itself amount to a rescission. The proof shows that the possession was retained by the appellee, and that he afterwards exercised rights of ownership over it, sent it to auction and had it sold without any notice to the appellant; under these circumstances the appellee cannot claim to recover upon the theory that the contract had been rescinded.

We think the *third* and *fourth* prayers of the appellant were properly refused ; under his *first, second, fifth, sixth* and *seventh* prayers which were granted he had the benefit of every defence before the jury to which he was entitled.

Being of opinion for the reasons before stated that there was error in granting the second prayer of the appellee, the judgment will be reversed, and a new trial awarded.

> *Judgment reversed,*
> *and new trial awarded.*