CASE 40.—ACTION BY GEORGE BRADFIELD AGAINST LLOYD SAPP AND OTHERS.—March 4, 1910.

## Sapp, &c. v. Bradfield.

Appeal from Daviess Circuit Court.

T. F. BIRKHEAD, Circuit Judge.

Judgment for plaintiff, defendants appeal.—Reversed.

1.  Sales—Action for Price—Breach of Warranty—Set-Off.— Where plaintiff warranted a horse sold to defendant to be sound, and it had a disease from which it died, defendant in an action for the price was entitled to counterclaim for feed, care, attention, and medicine furnished in an endeavor to cure the horse, after notice to plaintiff that the horse was worthless, and an offer to return.

2.  Sales—Animals—Breach of Warranty—Damages.—Where defendant purchased a horse from plaintiff under a warranty of soundness, to be used in certain logging operations, that plaintiff lost $300 as profits, and expended $100 in hiring other teams to complete his operations because the horse was so diseased that he could not be used, did not present a defense or counterclaim in an action for the price.

ELI H. BROWN and BROWN & NUCKOLS for appellants.

SWEENEY, ELLIS & SWEENEY for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE NUNN— Reversing.

This action was instituted on a note for $225, dated March 28, 1908. At the same time there was executed a mortgage upon a horse, mule, and wagon, the property which appellants received as a consideration for the note, and also upon a lot in Owensboro, Ky., 50 feet wide and 140 feet deep. Appellee sought to recover judgment for the amount of the note and to enforce his lien on the mortgaged property for its payment. Appellants filed an answer and counterclaim, which is as follows: "The defendants state that the note and mortgage sought to be enforced in this action were executed and delivered to the plaintiff for, and in, consideration of a two-horse wagon, a horse, and a mule constituting a team, under the following warranty, representations, and contract on the part of the plaintiff, which were accepted and relied on by them, viz.: The defendant Lloyd Sapp had been during the winter of 1908 and the spring of 1908, up to the 28th day of March, engaged in buying timber and cutting same into sawlogs in Ohio county, several miles from the railroad at Fordsville, and at said date, viz., March 28, 1908, defendant Lloyd Sapp was in great need of a team with which to haul his logs to the railroad so as to ship them to Owensboro, where he had engaged with the Owensboro Shovel & Tool Company to sell all the logs he could deliver them at $17.50 per 1,000 feet. He sought the plaintiff, and told him of his contract with said Owensboro Shovel & Tool Company to sell and deliver logs to it at the price of $17.50 per 1,000 feet in as great a quantity as he could deliver them, and that he had on hand in the woods several miles from the railroad at Fordsville in Ohio county a considerable number of said logs already cut, and proposed to cut a large quan-

tity of logs, and had bargained for the timber with which to cut said logs, that he had no team with which to haul his logs to the railroad for shipment to Owensboro, and was unable to hire any teams in the neighborhood where his logs and timber were located. He asked plaintiff if he had for sale a team which was suitable and able to do the hauling he had to do, and the plaintiff proposed then to sell to him the horse, mule, and wagon for which the note sued on was executed, and assured and warranted the said horse to be sound and able and good work horse and suitable for the work he wanted a team for. He also represented said horse and mule to be suitable for hauling sawlogs for defendant, but said the mule was slightly stringhalted, but not enough to injure him as a work mule. Defendants state that the defendant Lloyd Sapp relied upon the representations and warranty made him by the plaintiff that said horse was sound and a good work horse for the hauling he had to do, and, so relying, bought said team. He says there were no apparent defects in or about said horse, but so soon after he purchased same and took the team to the place where he needed its service, and attempted to haul sawlogs with said team the horse failed and refused to perform its work, it commenced running corruption from its nose and afterwards ran corruption from its mouth. It was badly diseased when it was purchased from plaintiff, and lingered in its diseased condition until November, 1908, when it died from the disease with which it was afflicted when purchased from the plaintiff. They state that they had no ability to buy another team with which to carry on the sawlog business nor to carry out defendant Lloyd Sapp's contract with the Owensboro Shovel & Tool Company,

and for that reason had to surrender said contract
by which he could and would have made a profit of
$300.   He says he was compelled to feed and care
for said diseased horse from March 28th to Novem-
ber 17th at a cost to him of about $80.   Said diseased
horse would have been worth $82.50 if it had been
sound and a good work horse.   He expended $100
in hiring teams to haul his logs already cut when
he bought said horse from plaintiff, which would
have been saved if said horse had been sound and
suitable for his work as represented and warranted
to be by plaintiff.   They state that the first time de-
fendant Lloyd Sapp met the plaintiff after he dis-
covered the diseased condition of said horse he pro-
posed to plaintiff to rescind said purchase of said
horse, mule, and wagon, and then informed him of
the fact that he had discovered that said horse was
diseased and unfit for work and was worthless, but
plaintiff declined to take back said horse or rescind
said contract, so they were compelled to keep and
care for said horse until its death.   These defend-
ants say they have been damaged in the sum of $480
by reason of the breach of plaintiff's warranty of
soundness of said horse.''

Appellee demurred to so much of the answer and
counterclaim as pleaded the $300 alleged profits and
$100 alleged to have been spent in hiring teams, be-
cause same did not present a defense or counter-
claim.   The court sustained the demurrer, and ap-
pellants declined to plead further.   Appellee filed a
reply, and denied that he warranted the horse to
be sound and all right, or that he made any war-
ranty respecting the horse, and denied that the
horse was diseased at the date of the sale to appel-
lants; denied that he had any knowledge or informa-

tion to form a belief that the horse began to run corruption at the nose or mouth; and denied that it was worthless or that appellants were damaged in the sum of $82.50 or any other sum on account of any alleged unsoundness of the horse. It appears that by some oversight the claim of appellants for $80 for expenses, trouble, and medicine in caring for the diseased horse until it died, November 17, 1908, was not noticed in the reply or demurred to. It results, therefore, that, if this was properly presented as a counterclaim, the court erred in rendering judgment for appellee for the alleged uncontroverted part of the debt sued for, fixing the amount at only $82.50, when the amount should have been $82.50 plus $80, or $162.50. A counterclaim is defined by section 96 of the Code as follows: "A counterclaim is a cause of action in favor of a defendant against a plaintiff, or against him and another, which arises out of the contract, or transaction, stated in the petition as the foundation of the plaintiff's claim, or which is connected with the subject of the action." If appellee warranted the horse to be sound and all right and it was not, but had a disease from which it died, and appellants furnished it feed, care, attention, and medicine until its death, eight or nine months thereafter, appellee should be held responsible to appellants for the reasonable cost thereof from the time he offered to return the horse and rescind the trade, but should not be allowed to recover for such expenses before offering to return the horse and rescind the trade, for the reason appellee should have had an opportunity to care for the horse if he desired, in which case he would have lost only the price for which he sold it. It would not be right to permit appallants after they found that the horse was dis-

eased and worthless to furnish it care, attention, and treatment in a sum equal to the value of the horse if sound without notice to appellee or an offer to return the horse to him, provided appellee did not know the horse was diseased at the time he sold him. If appellants exercised reasonable judgment and in good faith made an effort to cure the horse, they are entitled to a reasonable compensation therefor from the time they offered to return the horse to appellee. In the case of Galbreath v. Carnes, 91 Mo. App. 512, the court said: "We are of the opinion that a purchaser with warranty of soundness, which included freedom from hurtful disease, is entitled to be reasonably compensated for any reasonable attempt to cure the disease. For that is but an effort to lessen the damage, and, as such, it is a duty he owes the vendor. A purchaser cannot stand idly by and allow damages to grow which he can reasonably avert. If the effort is successful, the vendor is benefited. If it is unsuccessful, the vendee ought not to have to suffer for having made the effort, provided it was honestly made and the expense was such as a reasonable man would have incurred." To the same effect is 1 Sutherland on Damages, § 88, and the cases of Heenan v. Redmen, 101 Ill. App. 603, and Horn v. Buck, 48 Md. 358..

We recognize the general rule to be that in case of a breach of warranty the criterion of recovery is the difference in value between the article as delivered and the article as warranted. To this, however, may be added such special damages as are the natural and proximate consequences of the breach. The case at bar comes within the exception to the general rule. Appellee must have contemplated that at the time he sold and warranted the horse, if it

turned out to be worthless and diseased, appellants would have to incur expenses in attempting to cure it, and, if they failed in their attempt, they would lose not only the expenses thus incurred, but the price of the horse also. It was alleged in the petition that appellee warranted the horse to be sound and all right, but that it was not sound; that it was badly diseased and worthless, which, if true, showed a failure of consideration for the horse. It was also alleged that an offer was made to return the horse to appellee and rescind the trade and that appellee refused to do it. In our opinion the reasonable value for the care, attention, and medicine furnished the horse in an effort to cure him were proper subjects of a counterclaim, and the lower court erred in disregarding them. We are of the opinion, however, that the court did not commit an error in sustaining the demurrer to the $100 and $300 items. The case at bar is unlike the case of American Bridge Co. of New York v. Glenmore Distilleries Co., 107 S. W. 279, 32 Ky. Law Rep. 873. It was shown in that case that the distilleries company could not have procured a steel tower such as contracted for with the bridge company, and the bridge company knew it.

For these reasons, the judgment of the lower court is reversed and remanded for further proceedings consistent herewith.

Lassing, J., dissenting.