## Leavell v. Coleman.

(Decided October 17, 1911.)

### Appeal from Christian Circuit Court.

1. **Warranty of Personal Property.**—In an action upon a convenant of warranty the measure of damage is the difference between the article as delivered and the article as warranted; but when there

is a total breach of warranty and as a consequence the purchaser has derived no benefit from the property, it is not error to instruct the jury that if they find for the plaintiff they should allow the purchase price.

2. Warranty—Expense Incurred in Attempting Cure.—When the purchaser of an animal under a warranty of soundness discovers soon after the purchase that it is unsound, and is advised by the seller to keep the animal and give her attention, the seller is liable for the necessary expense incurred in giving the treatment advised.

DOUGLAS BELL, TRIMBLE & BELL for appellant.

W. T. FOWLER for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

On April 18, 1910, the appellee purchased from the appellant a mule for $250. The appellant warranted the mule to be sound in every particular. On April 30th, the mule died, and this suit was brought by appellee to recover on the warranty the price paid for the mule and $50 medical expense and attention rendered to the mule which it is alleged appellant directed appellee to incur in an effort to cure the mule.

In his answer the appellant admitted that he warranted the mule to be sound, and alleged that she was sound at the time he sold her, and that the sickness from which the mule died was contracted after the sale and delivery. He further denied that he directed the appellee to furnish any medical attention to the mule or that he was liable for any sum expended for this purpose.

Upon a trial before a jury, a verdict was returned in favor of appellee for $250. A reversal of the judgment upon this verdict is asked because the verdict is not sustained by the evidence and for error of the court in improperly instructing the jury.

As the warranty of the soundness of the mule was admitted, the only issue upon this feature of the case was whether the mule was unsound and suffering from the disease from which she died at the time of the sale, or, contracted the disease from which she died after the sale. It is hardly necessary to relate in detail the evidence upon this point, as we think there was sufficient to warrant the jury in finding that the mule was diseased, or in other words, not sound, at the time of the sale, and that from the effects of the disease, then in its incipient state, the mule died. The man who bought the mule for

appellee testifies that he noticed "she looked a little sleepy and droopy and that he called Leavell's attention to this fact, and Leavell said she was a little sore from shipping and would come around all right." He further testified that he took her home on Monday afternoon, and the next morning she refused to eat her food and was still looking droopy; and continued to grow worse from that time until the 30th, when she died. That she was only worked part of one day after the purchase. He further said that a few days after the sale he saw Leavell and told him the mule was in a bad condition, and that Leavell told him she would get well and advised him what treatment to give her; and that he gave her the treatment, and also sent for a veterinary. It is further shown that appellee gave the mule all necessary medical attention and took good care of her and made every effort to restore her to health, and that the expense incurred was about $25. Other witnesses testified to the sickly condition of the mule the day she was brought home, and the days following, and said that the mule had a severe case of distemper when Mr. Lowery owned her, shortly before Leavell purchased her and sold her to appellee.

On the other hand, Leavell testifies that the agent of appellee four or five days after she purchased the mule paid him part of the purchase money and did not make any complaint of the condition of the mule, that he had owned her about three weeks and she was sound when he sold her. The veterinary, who saw the mule about a week before she died, said that she then had or was threatened with pneumonia, and was in a bad condition; but he does not state definitely how long she had been suffering with this disease.

The court instructed the jury that—

"If they believed from the evidence that at the time of the purchase of the mule that said mule was unsound and diseased, and was at said time suffering from a severe disease, which soon afterwards proved fatal, they will find for plaintiff the contract price of said mule, to-wit: $250, with interest from April 22d, 1910, until paid; and should they further believe from the evidence that the plaintiff through her agent immediately upon the discovery of the diseased condition of the mule notified the defendant of the condition of the mule and made demand on defendant to rescind said sale and offered to

return said mule, but defendant insisted on her keeping said mule and doctoring it with certain remedies, stating that if the mule did not speedily recover that he would stand to his warranty and refund the purchase money, and the plaintiff did keep the mule as directed and expend labor and money in caring for said mule and securing a veterinary surgeon to examine and doctor said mule, they will in addition to the $250 above mentioned find for the plaintiff such a sum of money as will reasonably compensate her for her trouble and expense in keeping and caring for and doctoring said mule after it was tendered back to defendant, if she was so tendered, not exceeding the sum of $50.''

One objection to this instruction urged by appellant is that it does not lay down correctly the measure of damage plaintiff was entitled to recover. Counsel say "the correct measure of damages in a case like this for a breach of warranty is the difference in value between the article as delivered and the article as warranted." Counsel states correctly the measure of damages in cases for a breach of warranty, but we are unable to perceive in what respect the instruction given was prejudicial. Here there was a total breach of warranty and it is conceded that the mule was worth the purchase price. Appellee derived no benefit whatever from the mule, and was entitled to recover upon the warranty the full purchase price paid, if anything. It is also insisted that it was error to instruct the jury that they might allow anything for expense incurred in trying to cure the mule, as appellee did not tender her back after discovering her condition and before incurring the expense. There was, however, sufficient evidence upon this point to justify the court in submitting the question of expense to the jury, as there was testimony for appellee that she would have returned the mule except for the fact that when Leavell's attention was called to her condition, he advised appellee to keep her and instructed what kind of treatment to give. When the purchaser of an animal under a warranty of soundness discovers soon after the purchase that it is unsound, and upon learning this talks the matter over with the seller who advises the purchaser to keep the animal and to give her attention, the seller is liable for the necessary expense incurred in giving the treatment advised by the seller. Sapp v. Bradfield, 137 Ky., 308. We might further add that it appears from

the verdict, that the jury did not allow appellee anything for expense incurred in treatment of the mule.

Wherefore, the judgment is affirmed.